Neal LOEHRKE and Weyauwega Well Drilling, Inc., n/k/a Valley Well Drilling, Plaintiffs-Respondents,

v.

WANTA BUILDERS, INC., Defendant-Appellant.

Court of Appeals

*No. 88-0463. Submitted on briefs January 6, 1989.—Decided July 26, 1989.*

(Also reported in 445 N.W.2d 717.)

For the defendant-appellant the cause was submitted on the briefs of *Gary R. McCartan* and *Gary R. McCartan, S.C.,* of Wausau.

For the plaintiffs-respondents the cause was submitted on the brief of *Michael J. Backes* and *Alan D. Eisenberg, S.C.,* of Milwaukee.

Before Gartzke, P.J., Dykman and Sundby, JJ.

GARTZKE, P.J.  Wanta Builders, Inc. (the prime contractor) appeals from a judgment in favor of Neal Loehrke and Weyauwega Well Drilling, Inc. (the subcontractor) for $20,672.70 compensatory and punitive damages, interest and costs. The prime contractor contends the trial court erred as a matter of law when it submitted the issue of punitive damages to the jury and that it abused its discretion by awarding preverdict interest on the compensatory damage award.

We conclude that a fiduciary relationship existed between the prime contractor and the subcontractor by virtue of sec. 779.16, Stats., the "trust fund" statute. Violation of a fiduciary duty is a tort for which punitive damages may be awarded if warranted. We conclude that a contractor who fails to pay the subcontractor because of a bona fide dispute as to the amount due has not violated a fiduciary duty under sec. 779.16. We therefore

reverse that part of the judgment awarding punitive damages.

We conclude that preverdict interest should be limited to the undisputed part of the subcontractor's claim. We therefore reverse and remand for recalculation of interest.

The critical facts are essentially uncontroverted. The prime contractor engaged the subcontractor to install a well on a county landfill project. The agreed price for the installation was $6,420. The subcontractor installed the well, but on October 19, 1982 it billed the prime contractor for $8,424, including disputed extras. The county paid the prime contractor in February 1983 on its representation that all subcontractors had been paid. Since the prime contractor had not paid the subcontractor, the representation was false.

The presidents of the subcontractor and prime contractor met in April 1983 to settle the account. The prime contractor proposed to settle for $6,892 and tendered a check for that amount, on condition that the subcontractor execute a lien waiver. The lien waiver form provided that the subcontractor would "waive all rights and claims for lien on the buildings . . . for the prime contractor." The tender was refused. The subcontractor's president called the prime contractor on a few later occasions, but the prime contractor would not change its conditions.

The presidents met again a few months later. This time the prime contractor's president refused to make even a partial payment until the lien waiver was provided. In September 1983 the subcontractor's president broke into the home of the prime contractor's president, located and removed the $6,892 check, and unsuccessfully attempted to cash it.

The subcontractor then brought this action against the contractor for breach of contract and unjust enrichment, seeking $8,424 compensatory damages and also punitive damages. The prime contractor counterclaimed for trespass.

At the jury trial, the subcontractor's president testified without objection that well drillers had financial difficulties during the period involved. The amount due from the prime contractor was one of the subcontractor's larger outstanding invoices, and it needed payment to cover its own checks. The subcontractor's president claimed that the prime contractor's tactic was to "starve out a sub."[1] Nonpayment had caused him financial problems and difficulties in his marriage and family life. Witnesses for both sides testified at length regarding the extras claimed by the subcontractor, and the prime contractor's president conceded that he had never disputed that the subcontractor was entitled to the original contract price, $6,420.

At the close of the evidence, the court proposed to submit punitive as well as compensatory damage questions to the jury. The prime contractor objected to a question on punitive damages awardable to the subcontractor, on grounds that this was a contract case and there was no evidence of wanton, malicious, or reckless conduct on its part. The subcontractor contended that this was more than a contract case (without identifying the "more") and that the evidence justified it. The court ruled that the evidence would support a finding of wanton, reckless, and wilful refusal "to settle and to make

---

[1] He explained that "starving out a sub" meant that "[w]hen the general [or prime contractor] has the benefit of the money, time is on his side, and he can offer half if he'd like and sooner or later most subs will take it."

payment to the subcontractor," and submitted punitive damage questions to the jury.

The jury found that the prime contractor owed the subcontractor $7,632.67 on its well-drilling contract, including approved extras, and the court added preverdict interest to this award. The jury found that the prime contractor's "actions regarding payment under the contract [were] done maliciously, in wanton, wilful, or reckless disregard" of the subcontractor's rights and assessed $10,000 punitive damages against the prime contractor. The jury assessed $100 compensatory and $250 punitive damages against the subcontractor for the trespass.

Whether punitive damages are available is a question of law. We are not bound by the trial court's conclusion in this regard and decide the issue de novo. *State v. Big John,* 146 Wis. 2d 741, 748, 432 N.W.2d 576, 579 (1988).

Wisconsin courts have consistently held that punitive damages are unavailable in a breach of contract action. *Autumn Grove Joint Venture v. Rachlin,* 138 Wis. 2d 273, 279, 405 N.W.2d 759, 762 (Ct. App. 1987). The American Law Institute has adopted the same rule. "Punitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable." *Restatement (Second) of Contracts* sec. 355 (1979). The *Restatement* rule is followed in almost every jurisdiction which has considered the issue. J. Ghiardi and J. Kircher, *Punitive Damages* sec. 5.16 (1985).

If, however, a tort duty coincides with a contract obligation, either a contract or a tort action will lie for

701

its breach. *Autumn Grove,* 138 Wis. 2d at 281, 405 N.W.2d at 763. A tort duty coincides with a contractual obligation when the breaching party has a fiduciary duty to the other party. That was the situation in *Anderson v. Continental Ins. Co.,* 85 Wis. 2d 675, 689, 271 N.W.2d 368, 375 (1978), where an action was brought against a fire insurance company which had refused to honor its insured's claim and the insurer was held to be acting as a fiduciary. This, too, is consistent with the position of the American Law Institute. "A fiduciary who commits a breach of his duty as a fiduciary is guilty of tortious conduct to the person for whom he should act." *Restatement (Second) of Torts* sec. 874 comment b (1977).

Section 779.16, Stats., provides in part:

> All moneys . . . paid or to become due to any prime contractor . . . for public improvements are a trust fund only in the hands of the prime contractor . . . and shall not be a trust fund in the hands of any other person. The use of the moneys by the prime contractor . . . for any purpose other than the payment of claims on such public improvement, before the claims have been satisfied, constitutes theft by the prime contractor . . . and is punishable under s. 943.20.

The prime contractor described in sec. 779.16, Stats., is a trustee and therefore a fiduciary. The Wisconsin version of the Uniform Fiduciaries Act, sec. 112.01(1)(b), Stats., defines "fiduciary" as including a "prime contractor . . . who is a trustee under ch. 779."

A trust is impossible without a beneficiary. *Estate of Kessler,* 271 Wis. 512, 514, 74 N.W.2d 146, 147 (1956); *Restatement (Second) of Trusts* sec. 112 (1957). The beneficiary of a sec. 779.16, Stats., trust must be the claimants entitled to the trust fund, since the municipal-

ity is protected if it pays the prime contractor and no notice of lien has been filed by would-be claimants. Sec. 779.15(1). In the case before us, the subcontractor is a beneficiary. *Cf. Kraemer Bros. v. Pulaski State Bank,* 138 Wis. 2d 395, 399–400, 406 N.W.2d 379, 381 (1987) (money paid by owner to prime contractors and subcontractors under sec. 779.02(5) is trust fund for benefit of subcontractors and material suppliers).

Accordingly, by virtue of sec. 779.16, Stats., a fiduciary relationship exists between a prime contractor and a subcontractor when, as here, the prime contractor has been paid for a public improvement.[2]

Breach of a fiduciary duty is a tort, *Restatement (Second) of Torts* sec. 874 comment b, but a mere breach of fiduciary duty does not justify a punitive damage award. Punitive damages may be awarded only for tortious conduct which is wilful or wanton, in reckless disregard of rights or interests, *Brown v. Maxey,* 124 Wis. 2d 426, 433, 369 N.W.2d 677, 681 (1985), and may not be recovered in an action which is both a tort and a breach of contract, unless a tort is pleaded and proven, *White v. Benkowski,* 37 Wis. 2d 285, 292, 155 N.W.2d 74, 78 (1967). The prime contractor contends that no duty in

[2] The fiduciary relationship is not limited to cases in which a contractor is paid for *public* improvements. Section 779.02(5), Stats., imposes a trust upon "all moneys paid to any prime contractor or subcontractor by *any owner for improvements.*" (Emphasis added.) Although both secs. 779.02(5) and 779.16 impose criminal liability on prime contractors who use such moneys for other purposes before all claims have been satisfied, only sec. 779.02(5) provides an exception for monies "which are the subject of a bona fide dispute and then only to the extent of the amount actually in dispute."

tort was alleged or proven by the subcontractor. We disagree.

The complaint pleaded facts constituting a fiduciary duty and its breach. The complaint alleged a prime contractor-subcontractor relationship on a public improvement project and payment by the county to the prime contractor. A trustee-beneficiary relationship inheres in these facts as a matter of law. Sec. 779.16, Stats. The complaint alleged that the prime contractor refused to pay the subcontractor the amount due the latter. The complaint therefore pleaded facts comprising a tort and sought punitive damages. At the trial the subcontractor proved a prima facie case of tort and offered evidence of tort damages without objection. Nothing indicates that a recovery of contract plus tort damages occurred.

The prime contractor asserts, and we agree, that refusal with good cause to pay a disputed amount on contract cannot and should not be a tort. If the prime contractor has good cause to refuse to pay, it has not violated its fiduciary duty, no tort results and punitive damages are unavailable.

■

We reject the prime contractor's contention that no breach of the fiduciary relationship established by sec. 779.16, Stats., occurs unless the prime contractor used the money it received for a purpose other than to pay subcontractors who performed work on the public improvement. The statute exists to protect claimants. A claimant need not, as a precondition to recovery from the trust fund, establish that the prime contractor has used the money it received for a purpose other than to pay claimant. *In re Bossell, Van Vechten & Chapman,* 30 Wis. 2d 215, 218–20, 140 N.W.2d 255, 257–58 (1966). "If a theft were a requirement of recovery, the statute would be of little practical value and would not fulfill the

purpose for which it was created. Once the theft has occurred, the funds are gone and the contractor is usually insolvent." *Id.* at 220, 140 N.W.2d at 258.

We therefore turn to the sufficiency of the evidence for the punitive damage award against the prime contractor. The subcontractor contends that the prime contractor exhibited a reckless indifference to the rights of the subcontractor. It relies on the prime contractor's misrepresentation to the county and attempt to "starve out a sub."

The prime contractor's misrepresentations to the county create no basis for an award of punitive damages to the subcontractor. However outrageous the prime contractor's conduct was vis-a-vis the county, that conduct has nothing to do with the contractor's relationship with its subcontractor.

The prime contractor contends that withholding payment until the subcontractor furnished a lien waiver was prudent business practice and was not wilful or wanton delay in reckless disregard of the subcontractor's rights. The prime contractor argues that it sought to protect the county from a potential lien claim by insisting on a lien waiver. But the county had no need for the protection of a lien waiver. If the subcontractor had given the county the appropriate notice before the county paid the prime contractor, it could have obtained a "lien on the money . . . due the prime contractor." Sec. 779.15(1), Stats. There is no suggestion that the subcontractor gave that notice. Once the county had paid the prime contractor, it was too late for the subcontractor to file a lien under sec. 779.15(1). Consequently, the prime contractor's attempt to protect the county by obtaining a lien waiver has no legal basis. Where no right to a lien exists, a lien waiver is ineffectual.

However, regardless of the ineffectuality of the requested lien waiver, the subcontractor's president testified that he would have been a fool to sign it for less than full payment. The only reasonable inference is that he believed that by signing the waiver he would surrender valuable rights against the county and the prime contractor, and we infer from the prime contractor's insistence on the waiver that it had the same belief. Indeed, it was the tenacity of those beliefs which led to this lawsuit. The suit was tried on the common assumption of the parties and the trial court that under the circumstances a lien waiver had an effect of some undefined sort. Neither party requested an instruction which pointed out the meaninglessness of the waiver. The subcontractor did not request a jury instruction that the contractor had no right to demand the waiver.

For those reasons, the prime contractor's conduct was not outrageous. A groundless but bona fide attempt by the contractor to protect the county, even if it was unnecessary and resulted in substantial delay, is not outrageous conduct. We therefore reverse that part of the judgment awarding punitive damages.

We now reach the preverdict interest issue. Whether preverdict interest may be awarded is a question of law. *Murray v. Holiday Rambler, Inc.,* 83 Wis. 2d 406, 438, 265 N.W.2d 513, 529 (1978). Preverdict interest is available when damages are fixed and determinable or may be measured according to a reasonably certain standard. *Weyenberg Shoe Mfg. Co. v. Seidl,* 140 Wis. 2d 373, 389, 410 N.W.2d 604, 611 (Ct. App. 1987).

The rationale for an award of preverdict interest is that "if the amount of damages is either liquidated or determinable . . ., the defendant can avoid the accrual of

interest by simply tendering to the plaintiff a sum equal to the amount of damages." *Johnson v. Pearson Agri-Systems, Inc.,* 119 Wis. 2d 766, 771, 350 N.W.2d 127, 130 (1984). The prime contractor contends that because it tendered $6,892, and because the remaining $740 awarded by the jury was not determinable until the time of the verdict, preverdict interest should not be awarded.

Preverdict interest on the entire amount owed is not precluded if the tender was on condition that it be accepted as payment in full, and amount owed is greater than the tender. *Giffen v. Tigerton Lumber Co.,* 26 Wis. 2d 327, 334, 132 N.W.2d 572, 575 (1965). The tendered check for $6,892 was conditioned on delivery of a lien waiver and was several hundred dollars less than the $7,632 that the jury found was actually owed. For that reason, the tender did not preclude the court from awarding preverdict interest.

We agree, however, that preverdict interest should not have been awarded on the entire award. It could not be determined before the verdict how much was actually owed on the contract. Because there was real dispute as to which of the extra charges were necessary and properly authorized, preverdict interest is only proper on the amount due which was undisputed: $6,420.

We therefore reverse the portions of the judgment awarding punitive damages and preverdict interest, remand for a recalculation of the interest award, and otherwise affirm.

*By the Court.*—Judgment reversed as to punitive damage and preverdict interest awards and cause remanded with instructions, and otherwise affirmed.