In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2976

PRO-PAC, INC.,

*Plaintiff-Appellant,*

*v.*

WOW LOGISTICS COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 11 CV 1075—**J.P. Stadtmueller**, *Judge.*

ARGUED JANUARY 24, 2013—DECIDED JUNE 26, 2013

Before MANION and WOOD, *Circuit Judges,* and BARKER, *District Judge.*[*]

PER CURIAM. Pro-Pac, Inc. (Pro-Pac) was a packaging business that filed for Chapter 11 bankruptcy in 2006. Pro-Pac then filed an adversary proceeding against WOW Logistics Co. (WOW), a logistics service provider, for

[*] Hon. Sarah Evans Barker, of the Southern District of Indiana, sitting by designation.

aiding and abetting a Pro-Pac employee's breach of fiduciary duty. The bankruptcy court found that WOW had indeed aided and abetted the Pro-Pac employee, for which tort the court attempted to calculate the damages. But the bankruptcy court instead thought that its award to Pro-Pac had to rest on an independent unjust-enrichment claim. On appeal, the district court ordered the bankruptcy court to dismiss the case because the unjust-enrichment argument had been introduced too late in the proceeding. Pro-Pac appeals from the district court's ruling, arguing that the district court erred in dismissing the case and seeking reinstatement of the bankruptcy court's ruling. We agree that the district court erred in dismissing the case, but the bankruptcy court also erred in its approach to Pro-Pac's damages. Thus, we reverse the judgment of the district court with instructions to remand to the bankruptcy court. On remand, the bankruptcy court should reexamine the issues relating to a proper remedy for WOW's tort liability.

## I. Facts

Pro-Pac decided to expand into the warehouse and transportation industry. To do so, Pro-Pac contacted George Chapes, an experienced and well-connected veteran of the warehouse industry, and hired him in June 2005 to be its vice president of sales. Chapes received a salary from Pro-Pac and a benefits package that was worth significantly more than the packages paid to other members of Pro-Pac's sales team.

In August 2005, Pro-Pac subleased a warehouse in East Troy, Wisconsin, from WOW, a logistics service provider that brokers transportation services nation-wide and operates public warehouses in Wisconsin, Illinois, and Idaho. Pro-Pac met with WOW in April 2006 to consider another business deal, and WOW asked Pro-Pac if it could use Chapes as a business consultant. Pro-Pac expressed surprise in learning that WOW had been talking to Chapes about being a consultant for WOW. Pro-Pac told Chapes that "from this point forward . . . if you're working with WOW or there's something going on, [Pro-Pac] need[s] to know what's happening. [WOW is] our landlord. This is too close to home."

Pro-Pac and WOW entered into negotiations that would permit WOW to use Chapes as a consultant. These negotiations began on July 17, 2006, when Pro-Pac sent an email to WOW proposing that Chapes could work for WOW in exchange for an extension of Pro-Pac's lease with WOW and a rebate of its rent for two months per year for five years. Pro-Pac and WOW engaged in a series of calls and emails in an attempt to work out the details of an agreement. Ultimately, as the bankruptcy court determined, WOW offered to give Pro-Pac free rent for two months per year for five years in exchange for Chapes's services, provided that Chapes actually secured a deal for WOW. On August 3, 2006, Pro-Pac sent WOW an email "touching base" regarding the nego-tiations, and on August 8, 2006, Pro-Pac sent an email indicating that the parties were unable to reach a deal. WOW responded on August 9, 2006, agreeing to "table the idea for now."

While Pro-Pac and WOW were engaged in these nego-tiations, Chapes and WOW were secretly in contact with each other about a business opportunity with Vangard Distribution, Inc. (Vangard). Vangard was a warehouse company, whose president had called Chapes on August 2, 2006, with information about a substantial business deal. Vangard had a customer who needed storage for an overflow of sugar, but Chapes had only 24 hours to commit to the deal. Even though Chapes was working for Pro-Pac to secure accounts with companies like Vangard, he informed WOW about the deal, allowing WOW to negotiate a short-term agree-ment with Vangard and secure the Vangard account.

Chapes and WOW remained in contact after the Vangard deal. Throughout August 2006, Chapes and WOW called each other numerous times and WOW began to issue checks to Chapes for his commission on the Vangard deal. In November 2006, Pro-Pac reminded WOW that Pro-Pac should be included in any communica-tion between WOW and Chapes. WOW, however, had purchased a disposable cell phone for Chapes to use for its calls to him. WOW representative(s) also accom-panied Chapes on a trip to Idaho to meet a substantial client at about the same time. WOW continued to pay Chapes for the Vangard deal in amounts totaling $6,490, and in early 2007, WOW hired Chapes.

Pro-Pac filed for Chapter 11 bankruptcy on Novem-ber 20, 2006, and filed an adversary proceeding against WOW and Chapes on May 19, 2007. Among other al-legations, Pro-Pac alleged that Chapes, aided and abbetted

by WOW, breached his fiduciary duty to Pro-Pac by diverting business to WOW. Pro-Pac remained unaware of the full extent of the ongoing relationship between WOW and Chapes until WOW released documents during discovery that revealed the amount of revenues from the Vangard account. Pro-Pac presented several claims in its initial complaint, on some of which the bankruptcy court granted partial summary judgment, and Pro-Pac abandoned others. Ultimately, Pro-Pac proceeded with a single claim: for breach of fiduciary duty based on Chapes's diversion of the Vangard deal to WOW, and for WOW's aiding and abetting of Chapes's breach of fiduciary duty.

The bankruptcy court conducted a bench trial on June 7-8, 2011, during which Pro-Pac presented evidence to support its claims and its theory of damages. Pro-Pac's theory of damages was based on the lost brokerage commission it would have received if Chapes had informed Pro-Pac of the Vangard deal and Pro-Pac had acted as a broker between Vangard and WOW. Pro-Pac claimed that it would have received a 10% commission on the Vangard account and calculated that this 10% commission was worth $467,220. Pro-Pac did not seek to add any other causes of action, and, in any event, WOW specifically withheld its consent to the addition or consideration by the court of any new claims:

> Your Honor, as long as you're on a little hiatus here, I also want to make clear that I am [in] no way consenting to the trial [of] claims that have [not] been [pled]—such that there is a potential amendment to

the pleadings or anything like that. I've said that
before, I'll reiterate it now.

At the conclusion of the witnesses' testimony and ex-
hibits, the parties agreed that the remaining evidence and
arguments could be presented through deposition tran-
scripts and post-trial briefs.

In its post-trial brief, Pro-Pac stated that "an alternative
application of the facts under the doctrine of unjust
enrichment would result in damages of $385,000." Pro-Pac
supported this contention by arguing that it would
have received two months of free rent per year for five
years if its negotiations with WOW for Chapes's services
had been completed. Even though the negotiations for
Chapes's services were not consummated, WOW re-
ceived Chapes's services without having to pay anything
for them to Pro-Pac, *e.g.*, the two months of free rent per
year for five years. Based on its rent payment of $38,500
per month, Pro-Pac calculated that WOW was thus un-
justly enriched in the amount of $385,000. In its re-
sponse, WOW argued that "Pro-Pac's unjust enrich-
ment theory must be rejected" because Pro-Pac never
pled it. In reply, Pro-Pac did not offer further argument
on the theory of unjust enrichment.

In a memorandum opinion dated September 27, 2011,
the bankruptcy court determined that Chapes had
breached his fiduciary duty to Pro-Pac and that WOW
had aided and abetted that breach. Determining the
damages was more complicated. The bankruptcy court
rejected Pro-Pac's argument that it was entitled to a
10% commission on the Vangard deal, reasoning that "the

Vangard deal was far from finalized" and that Pro-Pac "provided no industry expert testimony in support" of its assertion that a 10% commission was an industry standard.

The bankruptcy court, apparently misunderstanding Pro-Pac's argument, viewed Pro-Pac's theory as a new, independent unjust-enrichment claim. Such a claim, it observed, had not been included in Pro-Pac's initial pleading. The bankruptcy court therefore, in reliance on Federal Rule of Bankruptcy Procedure 7015, addressed Pro-Pac's theory of unjust enrichment as a new claim. This bankruptcy rule incorporates Federal Rule of Civil Procedure 15, which sets out procedures for amending a pleading based on an objection at trial. The bankruptcy court noted WOW's objection interposed during the trial, but concluded that WOW would not suffer any prejudice if the pleadings were amended, thus allowing consideration of Pro-Pac's theory of unjust enrichment.

Applying Pro-Pac's theory of unjust enrichment to calculate damages, the court invoked Seventh Circuit precedent, noting that a "cause of action" contains three elements: "(1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of the fact of such benefit, and (3) acceptance and retention by the defendant of the benefit, under circumstances such that it would be inequitable to retain the benefit without payment of the value thereof." *Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 477 (7th Cir. 2009) (internal quotation marks omitted). The court found

that Pro-Pac had established each of these three elements and proceeded to calculate the damages. Regarding the claim against Chapes, the court ruled that "[t]he actual damages against Chapes are computed as the $6,490 referral fee he received from WOW." Regarding the claim against WOW, the court ruled that "[t]he actual damages against WOW are $385,000, representing two months' rent . . . for a total of five years." Additionally, because of Chapes's and WOW's "proven intentional disregard of Pro-Pac's rights," the bankruptcy court imposed punitive damages in the amount of $50,000 against Chapes and $50,000 against WOW.

Chapes and WOW appealed separately to the district court, and the district court issued two separate rulings resolving their appeals. On May 30, 2012, the district court affirmed the bankruptcy court's decision against Chapes for breach of his fiduciary duty and ruled that the punitive damages award was not excessive on the ground that even though "the actual damages against Chapes equaled a mere $6,490—representing the referral fee he received from WOW—the actual damages against WOW equaled $385,000." Therefore, "taking into account the entirety of the circumstances of this case," the court upheld the punitive damages award of $50,000 against Chapes. This ruling has not been appealed and thus is final.

A few months later, on August 14, 2012, the district court issued a ruling reversing and remanding the bankruptcy court's verdict against WOW. The district court held that Federal Rule of Civil Procedure 15(b)(1) was not

applicable and that the bankruptcy court had no other basis for considering Pro-Pac's theory of unjust enrichment. This led the court to the conclusion that Pro-Pac was not entitled to damages based on unjust enrichment, and, without those damages, punitive damages were also improper. The district court thus reversed and remanded the appeal "with instructions to dismiss the claims against [WOW]." Pro-Pac filed a timely appeal of this ruling.[1]

## II. Discussion

We review the factual findings of the courts below for clear error but review their legal conclusions *de novo*. *Rivinius, Inc. v. Cross Mfg., Inc.* (*In re Rivinius, Inc.*), 977 F.2d 1171, 1175 (7th Cir. 1992). Although the bankruptcy court and the district court both analyzed Civil Procedure Rule 15 to address Pro-Pac's theory of unjust enrichment, we see no need to amend the pleadings to include this theory of damages. We hold that the bankruptcy court and the district court erred by not considering Bankruptcy Rule 7054. The bankruptcy rule incorporates Civil Procedure Rule 54(a)-(c), which provides that a trial court "should grant the relief to which each party is entitled, even if the party has not

---

[1] The district court did not reexamine this ruling against Chapes when it reversed and remanded the determination of the bankruptcy court against WOW, and Chapes has not sought reconsideration of the ruling against him. Thus, we do not address any issues relating to Chapes's case.

demanded that relief in its pleadings." See also *Heitmann v. City of Chi.*, 560 F.3d 642, 645 (7th Cir. 2009) ("Prevailing parties get the relief to which they are entitled, no matter what they ask for."). To ensure that prevailing parties receive an appropriate recovery of damages when liability has been established, the appellate court ordinarily remands the case with instructions to the trial court to properly calculate the damages. See, *e.g.*, *Peabody v. Davis*, 636 F.3d 368, 374-79 (7th Cir. 2011).

In its memorandum opinion, the bankruptcy court ruled that WOW was liable to Pro-Pac for aiding and abetting Chapes's breach of fiduciary duty. Chapes's breach of fiduciary duty is recognized as a tort under Wisconsin law. See *Zastrow v. Journal Commc'ns, Inc.*, 718 N.W.2d 51, 62 (Wis. 2006). WOW is also liable in tort for aiding and abetting Chapes's breach of fiduciary duty. Restatement (Second) of Torts § 874 cmt. c (1979) ("A person who knowingly assists a fiduciary in committing a breach of trust is himself guilty of tortious conduct . . . ."); see also *Loehrke v. Wanta Builders, Inc.*, 445 N.W.2d 717, 721 (Wis. Ct. App. 1989) (citing § 874).

Despite the bankruptcy court's liability determination against WOW, the district court instructed the bankruptcy court to dismiss those claims, thus vacating the basis for any damages in Pro-Pac's favor. We hold that Pro-Pac is entitled to damages, however. Given the bankruptcy court's improper calculation of damages, remand is appropriate.

On remand, the bankruptcy court has a variety of options under Wisconsin law in crafting a remedy based on WOW's liability. Restitution may be available as an

equitable remedy in tort under Wisconsin law to offset WOW's unjust enrichment. *Puttkammer v. Minth*, 266 N.W.2d 361, 363 (Wis. 1978); *Gross Common Carrier v. Quick-N-Clean Corp.*, 132 N.W.2d 576, 578 (Wis. 1965). While one recognized measure of damages is based on the harm inflicted on the plaintiff, restitution is another recognized option, which is measured by "the defendant's gain or benefit." *Ludyjan v. Cont'l Cas. Co.*, 747 N.W.2d 745, 749 (Wis. Ct. App. 2008) (quoting 1 Dan B. Dobbs, Dobbs Law of Remedies: Damages, Equity, Restitution § 3.1, at 280 (2d ed. 1993)) (internal quotation marks omitted).

Wisconsin law does not limit restitution to merely unjust enrichment claims, but also allows plaintiffs to receive restitution as compensation for tort claims:

> In cases in which a tortfeasor has received from the commission of a tort against another person a benefit that constitutes unjust enrichment at the expense of the other, he is ordinarily liable to the other, at the latter's election, either for the damage done to the other's interests or for the value of the benefit received through the commission of the tort.

*N. Air Servs., Inc. v. Link*, No. 2008AP2897, 2012 WL 130531, at *4 (Wis. Ct. App. Jan. 18, 2012) (footnote omitted) (quoting Restatement (Second) of Torts § 903 cmt. b (1979)).[2]

---

[2] Although the Restatement uses the phrase "unjust enrichment" in this excerpt, *Link* clarified in a footnote that this phrase "refers to unjust enrichment as a concept in

(continued...)

Wisconsin courts have also recognized restitution as an appropriate remedy for a tortious breach of fiduciary duty. In *Hartford Elevator, Inc. v. Lauer*, the Wisconsin Supreme Court ruled that restitution was an appropriate remedy for an employee who breached his fiduciary duty to his employer. 289 N.W.2d 280, 281-82 (Wis. 1980). Although the complaint alleged a cause of action based on the employee's contract, the court analyzed the issue in terms of the employee's breach of fiduciary duty. *Id.* at 284-85. Regardless of whether a breach of a fiduciary duty is pled as a tort or contract claim, the same legal analysis applies to both types of claims when they over-lap. See *Loehrke*, 445 N.W.2d at 720 ("If, however, a tort duty coincides with a contract obligation, either a contract or a tort action will lie for its breach. A tort duty coincides with a contractual obligation when the breaching party has a fiduciary duty to the other party." (internal citation omitted)).

The Wisconsin Supreme Court also upheld an award of restitution for a breach of fiduciary duty in *Dick & Reuteman Co. v. Doherty Realty Co.*, 114 N.W.2d 475 (Wis. 1962). There it ruled that an insurance broker should pay back insurance commissions because the broker had wrongfully acquired the commissions by breaching a fiduciary duty created by a trust. *Id.* at 482-83. This case later appeared as Illustration 19 of § 43 of the

---

[2] (...continued)
damages law, not as a formal legal claim." 2012 WL 130531, at *4 n.6.

Restatement (Third) of Restitution & Unjust Enrichment (2011), which states:

> A person who obtains a benefit
>
> > (a) in breach of a fiduciary duty,
> >
> > (b) in breach of an equivalent duty imposed by a relation of trust and confidence, or
> >
> > (c) in consequence of another's breach of such a duty,
>
> is liable in restitution to the person to whom the duty is owed.

*Id.* at § 43.

Finally, the Restatement (Second) of Torts explains in detail the manner in which restitution for a breach of fiduciary duty can be calculated:

> In addition to or in substitution for . . . damages [for harm,] the beneficiary may be entitled to restitutionary recovery, since not only is he entitled to recover for any harm done to his legally protected interests by the wrongful conduct of the fiduciary, but ordinarily he is entitled to profits that result to the fiduciary from his breach of duty and to be the beneficiary of a constructive trust in the profits. . . .
>
> . . . The measure of . . . liability [for a defendant who assisted in the breach of a fiduciary duty], however, may be different from that of the fiduciary since he is responsible only for harm caused or profits that he himself has made from the transaction, and he is

> not necessarily liable for the profits that the fiduciary has made nor for those that he should have made.

Restatement (Second) of Torts § 874 cmt. b-c (1979); see also *Loehrke*, 445 N.W.2d at 721 (citing § 874).

To award restitution damages in favor of Pro-Pac requires an examination of WOW's profits from the Vangard deal. The bankruptcy court determined that by encouraging Chapes to breach his fiduciary duty, WOW helped direct the Vangard deal from Pro-Pac to itself, from which WOW presumably benefitted. The record is underdeveloped on this point, indicating only that WOW's revenues on the Vangard deal averaged $62,670 per month. Even if this number is accurate, it does not likely reflect profits, which would be based on a determination of revenues as well as costs. If the bankruptcy court pursues this remedy, unless the parties stipulate to WOW's profit from the Vangard deal, the bankruptcy court must direct the parties to properly develop these facts.

Alternatively, the "value of the benefit received through the commission of the tort" (*i.e.*, Chapes's consulting services) could be measured by examining what WOW was willing to exchange for those services immediately prior to its tortious conduct. During negotiations in the summer of 2006, WOW offered Pro-Pac free rent for two months per year for five years in exchange for Chapes's services, but following Chapes's referral of the Vangard deal to WOW, the negotiations between Pro-Pac and WOW ceased. As a result, WOW obtained access to Chapes's contacts without providing

Pro-Pac any payment, including the free rent. Pro-Pac calculated the value of this free rent as $385,000. But this value does not reflect a present-value calculation, which would discount the rent amount over the five-year time period. It is also debatable whether $385,000, the value WOW placed on five years of Chapes's services, represents a fair approximation of the value of the (much briefer) services wrongfully obtained. On the other hand, we note that WOW initially offered Pro-Pac significant rent concessions over a shorter period of time for the privilege of speaking with Chapes, regardless of whether Chapes's contacts helped WOW to secure any new business opportunities; this suggests a "floor" on the value of the services wrongfully obtained. If the bankruptcy court wishes to pursue this remedy, unless the parties are able to stipulate to the value of services that WOW received when the negotiations fell apart, the bankruptcy court must require the parties to properly develop these facts.

The bankruptcy court could also choose to award compensatory damages that address the harm sustained by Pro-Pac. This compensatory measure of liability and restitution often overlap, such that "the benefit to the one and the loss to the other are co-extensive." Restatement (First) of Restitution § 1 cmt. d (1937); see also *Lawlis v. Thompson*, 405 N.W.2d 317, 320 (Wis. 1987) (citing § 1). Under a compensatory damages theory, Pro-Pac would be entitled to receive the benefit of the free rent that it lost when WOW discontinued its negotiations for Chapes's services. As previously noted, the bankruptcy court estimated that these damages amount to

$385,000, but again, this does not reflect a present-value calculation. Nor is it clear that this amount, which reflects five years' worth of losses, is an appropriate measure of the harm caused by WOW's single breach. If the bankruptcy court wishes to pursue this remedy, unless the parties stipulate to the value of the free rent that Pro-Pac lost, the bankruptcy court must require the parties to properly develop these facts.

Regardless of whether the bankruptcy court awards damages premised on gain to WOW (*i.e.*, restitutionary damages) or loss to Pro-Pac (*i.e.*, compensatory damages), punitive damages are also available, if otherwise appropriate. Wisconsin law allows awards of punitive damages when "compensatory damages" are imposed. *Groshek v. Trewin*, 784 N.W.2d 163, 174-76 (Wis. 2010). The Restatement (Second) of Torts defines "compensatory damages" as "the damages awarded to a person as compensation, indemnity or restitution for harm sustained by him," Restatement (Second) of Torts § 903 (1979), and Wisconsin has adopted this definition, *Link*, 2012 WL 130531, at *3 n.4. Pro-Pac's reliance on any particular theory of tort damages does not foreclose an award of punitive damages to deter intentional wrongdoing, if such damages are deemed appropriate.

We leave to the bankruptcy court whatever discretion is necessary to formulate an appropriate remedy in Pro-Pac's favor based on WOW's tort liability. If the district court is not satisfied, of course, the district court can withdraw the reference and resolve the issues itself. 28 U.S.C. § 157(d) ("The district court may withdraw, in

whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."); see also *Home Ins. Co. of Ill. v. Adco Oil Co.*, 154 F.3d 739, 741-42 (7th Cir. 1998).

### III.  Conclusion

The bankruptcy court erred in its determination that WOW must pay $385,000 in damages to Pro-Pac based on Pro-Pac's unjust-enrichment theory. The case is remanded to the district court and to the bankruptcy court to reformulate the award of damages based on WOW's aiding and abetting of Chapes's breach of fiduciary duty. The judgment of the district court is REVERSED and the cause REMANDED with instructions to remand to the bankruptcy court for further proceedings consistent with this opinion.

MANION, *Circuit Judge*, concurring in part, dissenting in part.  I concur with the court's per curiam opinion with the exception of the court's final analysis holding that punitive damages could be available even when the court awards only restitution based on the defendant's gain (as opposed to the plaintiff's loss). As

I see it, Wisconsin law does not permit punitive damages unless there has been an award of compensatory damages. *Groshek v. Trewin*, 784 N.W.2d 163, 176 (Wis. 2010) ("[W]here there is no award of compensatory damages, punitive damages are not available."); *see also Tucker v. Marcus*, 418 N.W.2d 818, 823 (Wis. 1988) (holding that "punitive damages are not available where there has been no 'award' of *actual damages*" (emphasis added)).

Restitution based on the defendant's gain is not a form of compensatory damages under Wisconsin law. For starters, restitution and compensatory damages are not calculated in the same way; compensatory damages are based on the harm suffered by the plaintiff, while restitution is based on the defendant's gain. Because these remedies are calculated differently and do not always produce the same value of damages, restitution based on the defendant's gain is treated as an alternative remedy to compensatory damages. *See* Restatement (Second) of Torts § 903 cmt. b (1979) (cited in *N. Air Servs., Inc. v. Link*, No. 2008AP2897, 2012 WL 130531, at *3 n.4 (Wis. Ct. App. Jan. 18, 2012)). Furthermore, restitution is an equitable remedy, and Wisconsin still retains a distinction between law and equity for damages purposes. *See Groshek*, 784 N.W.2d at 175.

Therefore, restitution based on the benefit that WOW received would not be a sufficient basis for punitive damages. If the bankruptcy court wishes to award punitive damages, it must first award compensatory damages based on the harm Pro-Pac suffered.