**2021 WI App 75**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.: 2019AP2432

†Petition for Review filed

Complete Title of Case:

**CENTURY FENCE COMPANY,**

**PLAINTIFF-APPELLANT,**

**V.**

**AMERICAN SEWER SERVICES, INC. AND DENNIS BIONDICH,**

**DEFENDANTS-RESPONDENTS.**

| | |
|---|---|
| Opinion Filed: | October 6, 2021 |
| Submitted on Briefs: | September 29, 2020 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Gundrum, P.J., Neubauer and Reilly, JJ. |
| Concurred: | |
| Dissented: | |

Appellant
ATTORNEYS:                     On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Michael D. Huitink* and *Stephanie Hanold Anacker* of *Sorrentino Burkert Risch LLC,* Brookfield.

Respondent
ATTORNEYS:                     On behalf of the defendants-respondent, the cause was submitted on the brief of *Michael J. Ganzer* of *Terschan, Steinle, Hodan & Ganzer, Ltd,* Milwaukee.

COURT OF APPEALS
DECISION
DATED AND FILED

October 6, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP2432**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2018CV578**

**IN COURT OF APPEALS**

---

CENTURY FENCE COMPANY,

  PLAINTIFF-APPELLANT,

 V.

AMERICAN SEWER SERVICES, INC. AND DENNIS BIONDICH,

  DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Waukesha County: RALPH M. RAMIREZ, Judge. *Reversed and cause remanded for further proceedings.*

Before Gundrum, P.J., Neubauer and Reilly, JJ.

¶1 GUNDRUM, P.J. Century Fence Company appeals from an order of the circuit court dismissing its claim under WIS. STAT. § 779.16 (2019-20)[1] for theft by contractor. Century contends it is the victim of such theft committed by American Sewer Services, Inc. and Dennis Biondich and that following the court trial on the claim, the circuit court erroneously held to the contrary. We agree, and we reverse and remand for further proceedings.

## *Background*

¶2 American was the prime contractor for the City of Waukesha to replace a water main on Les Paul Parkway. As such, American entered into a subcontract with Century in February 2016 for Century to provide pavement-marking services for $10,995. In October 2016, after Century performed the services, it billed American $10,245, applying a $750 discount to the final bill. American subsequently requested payment from Waukesha of $11,000 for Century's services, and in December 2016, Waukesha paid American that amount for these services, which payment American deposited into its general account that same month.

¶3 Despite receiving this payment from Waukesha, American did not pay Century. Instead, on March 1, 2017, Biondich, the president and sole shareholder of American, sent a letter to Century claiming that American owed Century only $3007—and requesting that Century revise its bill to indicate this— because when Century arrived at the job site there ended up being less work for

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

Century to perform than what had been contemplated when American accepted Century's bid for the job.[2] In a March 9, 2017 letter to Biondich, Century responded that it was entitled to the full payment of $10,245 as the contract was a "lump sum," not "unit price," contract. Century further explained additional work it had to perform to fulfill the contract, for which it did not charge American. American still did not pay Century any portion of the $11,000 it had received from Waukesha for Century's services.

¶4 By counsel, Century again sought full payment from American, but American did not comply; instead, in February 2018, American transferred $11,000 to the client trust account of American's own counsel. On March 27, 2018, Century filed suit against American and Biondich, and it subsequently filed an amended complaint stating causes of action for theft by contractor, misappropriation of trust funds, unjust enrichment, breach of contract, and conversion. On February 27, 2019—eleven months after Century filed suit and nearly two and one-half years after Century performed the pavement-marking services for American pursuant to their contract—counsel for American sent a check in the amount of $3007 from the firm's client trust account made payable to the client trust account of counsel for Century.

---

[2] The circuit court found that Biondich was the one who made "[t]he decision to co-mingle the funds received from Waukesha in American Sewer's account, as well as the decision to withhold payment from Century Fence." American and Biondich do not challenge this finding on appeal; thus, the misappropriation in this case is deemed theft by Biondich as well as American. *See* WIS. STAT. § 779.16 ("If the prime contractor or subcontractor is a corporation, limited liability company, or other legal entity other than a sole proprietorship, such misappropriation also shall be deemed theft by any officers, directors, members, partners, or agents responsible for the misappropriation."). At times we will use "American" to refer to American Sewer Services, Inc., and at times we will use it to refer to American and Biondich collectively.

¶5      Century's suit came on for a court trial, and the circuit court found that it was "very clear" that the contract between Century and American was a "[f]ixed services, not a per item contract" and was "for the job. It was for the services rendered…. It wasn't for X number of feet of striping. It was for pavement markings at the job …." The court found that Century "completed the job as requested" and "fulfilled its obligation. It did the job that it was asked to do…. [T]here was … [c]omplete performance of the contract." The court continued:

> And then American Sewer Services, as the contractor, told the City of Waukesha the job is done, pay us the $11,000. The City of Waukesha paid them that amount.
>
> American Sewer Services didn't say, hey, we got it done for $3,007.00 so let's cut it off the contract. No.[3] [American] took the money because the job was done, quite honestly. Did they apply it to some other aspects of the job? I think so. There was that testimony. There was … other landscaping that needed to be done.

The court found that American "fail[ed] … to meet [its] obligation" to Century, adding "you know, American Sewer Services at or before the time of the commencement of the job could have anticipated the diminishment of work that was going to be needed. Could have renegotiated the contract. Could have asked to review and renew the negotiations, but they chose not to do that for whatever reason." The court found that American breached its contract with Century, and it ordered American to pay to Century the remaining $7238 of the $10,245 bill.

---

[3]  Nor did American pass along to Waukesha the $750 discount from Century on the final bill.

¶6      The circuit court "wrestl[ed]" more with the theft-by-contractor cause of action.[4]

> [A]s [counsel for Century] said, really if you parse out the elements, you have it all there. It's all there. Did Century Fence provide goods or services? They did. Did they meet their obligation? Did American Sewer Services receive payment for the subcontractor services? Yes, they did. Did they pay it to Century Fence? They did not.

The circuit court determined, however, that "by a hair's brea[d]th" Century failed to meet its burden of proof with regard to its theft-by-contractor claim because "American Sewer was solvent and always able to pay the contested amount due and owing" and "there was an arguably viable issue as to the value of the work performed by Century Fence." Century appeals.

### *Discussion*

¶7      Century asserts that the circuit court erred in determining that it failed to prove theft by contractor. We agree.

¶8      Where the circuit court acts as the trier of fact, as in this case, we will not upset the court's findings unless they are clearly erroneous. *See* WIS. STAT. § 805.17(2); ***Farrell v. John Deere Co.***, 151 Wis. 2d 45, 62, 443 N.W.2d 50 (Ct. App. 1989). Interpretation and application of the law to those facts, however, is a matter of law we review de novo. ***Phelps v. Physicians Ins. Co. of Wis., Inc.***, 2009 WI 74, ¶¶35-36, 319 Wis. 2d 1, 768 N.W.2d 615.

---

[4] The circuit court also wrestled with—and rejected—the conversion claim, but Century is only appealing the theft-by-contractor claim. Thus, we deem it to have abandoned the conversion claim.

5

¶9     Pursuant to Wis. Stat. §§ 895.446, 779.16, and 943.20(1)(b),[5] Century seeks treble damages and other remedies for theft by contractor. For

---

[5] Wisconsin Stat. § 895.446 provides in relevant part:

**(1)** Any person who suffers … loss by reason of intentional conduct … that is prohibited under … [Wis. Stat. § ]943.20 … has a cause of action against the person who caused the … loss.

**(2)** The burden of proof in a civil action under sub. (1) is with the person who suffers … loss to prove a violation of … [Wis. Stat. § ]943.20 … by a preponderance of the credible evidence….

**(3)** If the plaintiff prevails in a civil action under sub. (1), he or she may recover all of the following:

(a) Actual damages ….

(b) All costs of investigation and litigation that were reasonably incurred, including the value of the time spent by any employee or agent of the victim.

 (c) Exemplary damages of not more than 3 times the amount awarded under par. (a)….

Wisconsin Stat. § 779.16 provides in relevant part:

**Theft by contractors**. All moneys … paid … to any prime contractor … for public improvements are a trust fund … in the hands of the prime contractor … to the amount of all claims due or to become due or owing from the prime contractor … for labor, services, materials, plans, and specifications performed, furnished, or procured for the improvements, until all the claims have been paid …. The use of any such moneys by any prime contractor … for any other purpose until all claims, except those which are the subject of a bona fide dispute and then only to the extent of the amount actually in dispute, have been paid in full … is theft by the prime contractor … of moneys so misappropriated and is punishable under [Wis. Stat. § ]943.20. If the prime contractor … is a corporation, limited liability company, or other legal entity other than a sole proprietorship, such misappropriation also shall be deemed theft by any officers, directors, members, partners, or agents responsible for the misappropriation.

(continued)

these remarks, Century must have established at trial that American committed criminal theft by contractor. As relevant to this case, Century needed to prove by a preponderance of the evidence that: (1) American acted as a prime contractor; (2) American received money from Waukesha for public improvements; (3) American intentionally used, retained, or concealed the money "for purposes other than the payment of bona fide claims for labor or materials prior to the payment of such claims"; (4) the use, retention, or concealment was without Waukesha's consent and was contrary to American's authority; (5) American knew the use, retention or concealment was without Waukesha's consent and contrary to its authority; and (6) American used, retained, or concealed the money with the intent to convert it to its own use or the use of another. *See **Tri-Tech Corp. of Am. v. Americomp Servs., Inc.***, 2002 WI 88, ¶¶26, 30, 43, 254 Wis. 2d 418, 646 N.W.2d 822 ("To sustain a cause of action for treble damages … the

---

WISCONSIN STAT. § 943.20 provides in relevant part:

**Theft.** **(1)** ACTS. Whoever does any of the following may be penalized as provided in sub. (3):

….

(b) By virtue of his or her office, business or employment, or as trustee or bailee, having possession or custody of money … of another, intentionally uses, transfers, conceals, or retains possession of such money … without the owner's consent, contrary to his or her authority, and with intent to convert to his or her own use or to the use of any other person except the owner. A refusal to deliver any money … which is in his or her possession or custody by virtue of his or her office, business or employment, or as trustee or bailee, upon demand of the person entitled to receive it, or as required by law, is prima facie evidence of an intent to convert to his or her own use within the meaning of this paragraph.

elements of both [WIS. STAT. §§ 779.02[6] and 943.20] must be proven."); *see also* §§ 779.16, 943.20(1)(b).

¶10    Though the circuit court found that Century failed to meet its burden of proving theft by contractor, it did not specifically identify which of these six elements was not satisfied.  The court expressed that the only reasons it concluded that Century had not met its burden "by a hair's brea[d]th" were "due to the fact that American Sewer was solvent and always able to pay the contested amount due and owing, and because there was an arguably viable issue as to the value of the work performed by Century Fence."  As best we can tell based on the court's ruling and the arguments on appeal, these reasons were that Century failed to sufficiently prove the third and sixth elements above—that American intentionally used, retained, or concealed the money (that had been received from Waukesha) "for purposes other than the payment of bona fide claims for labor or materials prior to the payment of such claims" and used, retained, or concealed the money with the intent to convert it to its own use or the use of another.  *See Tri-Tech*, 254 Wis. 2d 418, ¶¶26, 30.

¶11    Related to these elements, American asserts in its appellate briefing that our supreme court in *Tri-Tech* "specifically held that placement of money into a bank account, even though that account may be encumbered by a security interest, is insufficient to establish a prima facie case of specific criminal intent." *Tri-Tech* did not hold this.  Rather, *Tri-Tech* held that *if* the record lacks evidence

---

[6] The statute at issue in *Tri-Tech Corp. of America v. Americomp Services, Inc.*, 2002 WI 88, 254 Wis. 2d 418, 646 N.W.2d 822, was WIS. STAT. § 779.02.  Here, WIS. STAT. § 779.16, the theft-by-contractor statute for public projects, is at issue.  The two statutes are substantially the same.

"as to demand and refusal to pay," admission to "depositing the payment … into a bank account encumbered by a security interest is insufficient *by itself* to establish a prima facie case of specific criminal intent." **Tri-Tech**, 254 Wis. 2d 418, ¶32 (emphasis added). In the case now before us, there was a demand by Century and a refusal to pay by American, and American's depositing of the $11,000 into its general account was not the only evidence of American's intent.

¶12 In October 2016, Century billed American $10,245 for the pavement-marking services it had completed for American. Despite Waukesha paying American the funds for these services, American, by Biondich's letter of March 1, 2017, refused to pay Century the amount owed. A week later, Century again demanded payment from American, which American again did not provide. Even when Century demanded payment from American a third time, this time through counsel, American continued to refuse to pay Century the contracted amount—instead merely transferring $11,000 to the client trust account of American's own counsel. More than a year after American sent its initial refuse-to-pay letter to Century, Century was forced to initiate this lawsuit in order to recover what it was owed and should have been paid by American long before.

¶13 WISCONSIN STAT. § 943.20—theft—provides in paragraph (1)(b): "A refusal to deliver any money … which is in his or her possession or custody … as trustee …, upon demand of the person entitled to receive it, or as required by law, is prima facie evidence of an intent to convert to his or her own use within the meaning of this paragraph." *See* **Tri-Tech**, 254 Wis. 2d 418, ¶32 (concluding "proof of refusal to pay contractor funds on demand of one entitled to receive them" constitutes prima facie evidence of criminal intent as "specifically approved in the statute"). Once Waukesha paid American the $11,000 for the pavement-marking services performed by Century, American became the trustee of those

funds and was required to pay Century the $10,245 that it demanded and was owed. *See* WIS. STAT. § 779.16; *Tri-Tech*, 254 Wis. 2d 418, ¶25; *Loehrke v. Wanta Builders, Inc.*, 151 Wis. 2d 695, 702, 445 N.W.2d 717 (Ct. App. 1989). American could not lawfully retain any of the funds for its own purposes until it paid Century's $10,245 claim on the contract; yet, the circuit court found, based on Biondich's related testimony, that Century placed the $11,000 in its general account and that "[m]oney in the American Sewer general account, including money received from Waukesha for work performed by Century Fence, [was] used to pay American Sewer's expenses, employees, etc." As our supreme court stated in *Burmeister Woodwork Co. v. Friedel*, 65 Wis. 2d 293, 298, 222 N.W.2d 647 (1974), where funds are used for "the ordinary and normal expenses of the business," they are used "for purposes other than the payment of claims as provided in the statute," which is "the only important point." Because "payments made to a prime contractor [like Waukesha's payment to American] are not actually owned by the prime contractor," *see State v. Keyes*, 2008 WI 54, ¶29, 309 Wis. 2d 516, 750 N.W.2d 30, American "could do only one thing with the trust funds and that was to pay the subcontractor[]," Century, *see State v. Blaisdell*, 85 Wis. 2d 172, 179, 270 N.W.2d 69 (1978). "Only after that was done was [it] entitled to use [excess] funds for corporate purposes." *See Burmeister*, 65 Wis. 2d at 300.

¶14     The circuit court's statement that Century did not prove American committed theft by contractor because American "was solvent and always able to pay the contested amount due and owing" appears to be a statement that for this reason Century did not prove that American intentionally used the money from Waukesha for purposes other than the payment of Century's claim (third element) and/or did not prove that American used, retained, or concealed the money with

the intent to convert it to its own use or the use of another (sixth element). *See Tri-Tech*, 254 Wis. 2d 418, ¶¶26, 30. The court's determination that Century did not prove its theft-by-contractor claim because American was "solvent and always able to pay" is incorrect as a matter of law.

¶15 Biondich conceded that the money Waukesha paid American for Century's pavement-marking services went into American's general account "[t]hat is used for American Sewer's benefit to pay employees and obligations." As noted, the circuit court relatedly found that "[m]oney in the American Sewer general account, including money received from Waukesha for work performed by Century Fence, [was] used to pay American Sewer's expenses, employees, etc." The evidence unquestionably showed that American retained and used the $10,245 it owed Century, including the $3007 that American itself indisputably acknowledged it owed, for a "purpose" other than paying Century—to support American's general account for payment of its own business obligations. Because American refused to even pay Century the $3007, it appears American was also using the full $10,245 as leverage to try to get Century to capitulate and waive the additional $7238 owed on the contract.

¶16 Additionally, at trial, Steve Klomsten, the project manager for American, testified that American considered the difference between the $11,000 Waukesha paid it and the $3007 admittedly owed to Century to be rightfully American's to keep as a means of payment from Waukesha to American for additional work American completed on the job but for which American did not bill Waukesha. As the circuit court found, American "appl[ied] [that difference]

to some other aspects of the job.... There was that testimony. There was … other landscaping that needed to be done." American does not dispute this finding.[7] The evidence showed that American used a significant portion of the $11,000 Waukesha paid it for Century's services to instead pay itself for other work it did on the job. American also committed theft by contractor in this way as it "could do only one thing with the trust funds and that was to pay the subcontractor[]," Century. *See* **Blaisdell**, 85 Wis. 2d at 179. As stated, "[o]nly after that was done was [American] entitled to use [excess] funds for corporate purposes." *See* **Burmeister**, 65 Wis. 2d at 300.

¶17 American contends that it cannot be held liable for theft by contractor because it paid Century $3007 after Century filed this suit and paid the remaining balance of $7238 after the circuit court ruled that American breached the contract and ordered it to make that latter payment. American, however, could not cure its theft once the crime was completed. *See* **State v. Sobkowiak**, 173 Wis. 2d 327, 336, 496 N.W.2d 620 (Ct. App. 1992) ("Sobkowiak could not cure his theft by ultimately repaying the funds diverted to his personal use or by satisfying the claims of the laborers and materialmen after his offense was complete."); *see also* **KBS Constr., Inc. v. McCullough Plumbing, Inc.**, No. 2008AP1867, unpublished slip op. ¶23 (WI App Dec. 23, 2009) (Theft by contractor "occurs at the time the funds are misappropriated."); **Blaisdell**, 85 Wis. 2d at 180 (If the requisite wrongful intent "did exist at the time [of 'the deposit and subsequent use of the funds by the defendant for his own benefit'],

---

[7] Klomsten's testimony and the circuit court's finding to this effect is also consistent with Biondich's confirmation at trial that American did additional asphalt paving, landscaping, and "some additional … water laterals" on the Waukesha job that it "did not bill for."

even a contemporaneous intent to pay back the money at a later time would be of no legal consequence."). Were American's position the law, no one could ever be held liable, civilly or criminally, for theft so long as he or she returned the stolen funds or object once caught. American had no lawful basis to withhold any funds from Century or to do anything with the payment from Waukesha other than pay Century the contracted amount. The theft-by-contractor statute does not allow for what occurred here—a prime contractor paying itself from moneys it held in trust for a subcontractor prior to paying what is owed to that subcontractor and holding hostage money owed to a subcontractor in an effort to get the subcontractor to accept less than the contracted price by forcing the subcontractor to choose between hiring lawyers and initiating an expensive lawsuit or agreeing to the lesser amount.

¶18 American further asserts that "it is impossible to conclude that [American] had converted the money to [its] own use, when in fact … upon learning of the potential claim [by Century], the entire contract amount was immediately placed into trust" "pending the outcome of the case." Of course this was not payment to Century but placement into the trust account of *American's* attorney—after American's crime was complete and Century had to hire counsel. Even this trust-account maneuver by American was almost a year after American had refused Century's first demand for payment and Century made its second demand. This maneuver amounted to little more than a continued refusal to pay Century the $10,245 it owed, including the $3007 that American acknowledged it owed. American refused to pay the contracted amount when requested, retained and used the funds due to Century, and had no arguably lawful basis to do so. This constituted "prima facie evidence of an intent to convert [the money] to

13

[American/Biondich's] own use within the meaning of this paragraph." *See* WIS. STAT. § 943.20(1)(b).

¶19    Despite finding that American breached the contract with Century, the circuit court, it seems, determined that Century also did not meet the third element of theft by contractor because it believed there was "some question" about "the value of the work done" by Century. We presume the court was suggesting that there was a "bona fide dispute."[8] We believe the court erred.

¶20    Based on the undisputed evidence at trial and the circuit court's findings, when Century arrived at the job site, there ended up being less work for it to do than originally expected. But, as the court also found, and correctly so, the contract was a fixed fee/lump-sum contract for "the job." The contract in no way suggests that the amount due to Century depended on how much pavement marking was required in order for Century to complete the job. Thus, where Century undisputedly completed the job as the contract required, a question about how much work was necessary to complete the job is irrelevant to the question of

---

[8]   WISCONSIN STAT. § 779.16 provides in part that

> [t]he use of any such moneys by any prime contractor … for any other purpose until all claims, *except those which are the subject of a bona fide dispute* and then only to the extent of the amount actually in dispute, have been paid in full … is theft by the prime contractor … of moneys so misappropriated and is punishable under [WIS. STAT. §] 943.20.

A "bona fide" dispute means a dispute that is "real, actual, genuine" and "in fact exists and is not merely pretextural or feigned on the part of the [party] in an attempt to avoid his [or her] obligations under the law." *See **Kansas City Star Co. v. DILHR***, 60 Wis. 2d 591, 601, 211 N.W.2d 488 (1973).

what was owed to Century under the contract. American had no legitimate ground for withholding payment simply because it, after-the-fact, may have regretted not negotiating the contract differently.[9] There was no bona fide dispute.

¶21    Finally, American states that "in ***Loehrke v. Wanta Builders, Inc.***, 151 Wis. 2d 695, 445 N.W.2d 717 (Ct. App. 1989), the court held that the contractor who fails to pay over the amount due does not violate the fiduciary duty owed under [WIS. STAT.] § 779.16." Not quite. We actually held that "refusal *with good cause* to pay a disputed amount on contract cannot and should not be a tort. If the prime contractor has *good cause* to refuse to pay, it has not violated its fiduciary duty, no tort results and punitive damages are unavailable." ***Loehrke***, 151 Wis. 2d at 704 (emphasis added). The obvious difference in this case, is that American had no "good cause" to refuse to pay the contracted amount to Century.

¶22    For the foregoing reasons, we conclude the circuit court erred in determining that Century failed to prove theft by contractor.

*By the Court.*—Order reversed and cause remanded for further proceedings.

---

[9] While it would be a different question if there was a "bona fide dispute" based on the quality of Century's work, American never indicated that such an issue served as a basis for it to withhold Century's money.