COURT OF APPEALS
DECISION
DATED AND FILED

July 7, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2021AP1985**

**STATE OF WISCONSIN**

Cir. Ct. No.  2019CV2861

**IN COURT OF APPEALS
DISTRICT IV**

THUNDERBIRD ENGINEERING, INC.,

   PLAINTIFF-APPELLANT,

 V.

AMERICAN DESIGN, INC. AND JOHN T. WILLIAMS,

   DEFENDANTS-RESPONDENTS.

        APPEAL from an order of the circuit court for Dane County: STEPHEN E. EHLKE, Judge. *Affirmed*.

        Before Fitzpatrick, Graham, and Nashold, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

        ¶1     PER CURIAM. Thunderbird Engineering, Inc. ("Thunderbird") appeals an order denying its request for exemplary damages and partially denying

its request for attorney fees pursuant to WIS. STAT. § 895.446(3) (2021-22).[1] Thunderbird also appeals the circuit court's ruling denying its requests for attorney fees under WIS. STAT. § 802.05(3) associated with responding to an unsuccessful request for sanctions filed by American Design, Inc. ("American Design") and John Williams (collectively, "Defendants"), and under WIS. STAT. § 804.12(2) for Defendants' alleged discovery violations. We affirm.

## BACKGROUND

¶2 This appeal arises in a somewhat unique procedural posture. The circuit court granted summary judgment to Thunderbird on its breach-of-contract and theft-by-contractor claims after Defendants failed to respond to Thunderbird's requests for admission. Defendants do not challenge the court's order granting summary judgment against them. Instead, Thunderbird appeals the court's denial of its request for exemplary damages and the court's award of only partial attorney fees on Thunderbird's theft-by-contractor claims. Therefore, the following background focuses on facts relevant to these limited issues.

¶3 American Design is an architectural firm, with Williams as its president, majority owner, and sole active officer. In 2018, American Design entered into contracts to serve as the prime contractor for the renovation of two buildings in Milwaukee: the Andrew S. Douglas School ("Douglas project"), owned by the Milwaukee Public Schools ("MPS"); and the Merchant & Farmers State Bank Building ("Bader project"), owned by Bader Philanthropies, Inc.

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶4     American Design hired Thunderbird as one of its subcontractors, to perform HVAC, plumbing, and electrical services on both projects. Shawn Woldt is the president of Thunderbird.

¶5     American Design and Thunderbird entered into contracts for the Douglas and Bader projects (the "Douglas contract" and "Bader contract," respectively). The Douglas contract required that American Design "attempt" to pay Thunderbird for its services within thirty days of receiving payment from MPS. The Bader contract required that American Design pay Thunderbird "promptly" after receiving payments from Bader Philanthropies, Inc. In addition, each contract required Thunderbird to name each project owner, MPS and Bader Philanthropies, respectively, as an additional insured under its general liability and umbrella liability insurance policies. Thunderbird's failure to comply with these insurance requirements could result in American Design being in breach of its contract with the project owners.

¶6     Over the course of the projects, MPS and Bader Philanthropies timely paid American Design approximately $380,000. Out of those funds, American Design would ultimately owe Thunderbird a total of $87,495 for its work on the Douglas project and $41,520 for its work on the Bader project.

Douglas Project

¶7     Thunderbird's work on the Douglas project began in late 2018 or early 2019, with most of the work completed by August 2019. On October 3, 2018, American Design's office manager, Beverly Helbling, emailed Thunderbird's business manager, requesting that Thunderbird send Helbling a copy of Thunderbird's certificate of insurance ("COI") naming MPS as an additional insured on its policies, as the contract required. Helbling repeated this request in

3

emails sent on December 10 and 12, 2018. Despite Thunderbird's attempts to rectify the insurance issues, as of April 4, 2019, Thunderbird still had not satisfied the contract requirement that MPS be included as an additional insured. In addition, as the circuit court found, there continued to be "legitimate concerns regarding insurance in the months after April of 2019," which "[e]ven Mr. Woldt admitted [to] in his deposition testimony." Thunderbird did not produce a COI for the Douglas project containing the correct "additional insured" language until March 12, 2021, a few weeks before trial.[2]

¶8      In addition to the insurance issues, there were also issues involving Thunderbird's failure to sign the Douglas contract. In November 2018, Helbling notified Thunderbird that American Design had not yet received a signed copy of the contract and Helbling twice emailed Thunderbird the contract for signature. About seven months later, in June 2019, following Woldt's complaints to American Design about payment delays, Williams explained that he had needed to apply his "executive override" to pay Thunderbird because Woldt had not signed the contract. Williams requested that Woldt sign the contract. In July 2019, there were still ongoing emails and discussions about getting the Douglas contract signed, with Thunderbird ultimately signing the contract on July 23, 2019.

---

[2] Defendants state that, by the start of trial, American Design had asked Thunderbird to provide a compliant COI nine times but never received one. Thunderbird argues that this is a "blatant mischaracterization of the evidence." However, in support of this assertion, Thunderbird cites, among other things, Woldt's own testimony at trial in which he twice agreed that Defendants had requested the insurance information nine times before receiving it. We therefore question Thunderbird's characterization of Defendants' statement as a "blatant mischaracterization." It is unnecessary for purposes of our decision in this case, however, to determine the exact number of times that Defendants requested the COI. The circuit court concluded that there were ongoing "legitimate" concerns about the insurance issues, extending up through and after April 2019. Although Thunderbird argues that the insurance concerns expressed by Defendants were only a "pretext to cover up Defendants' misuse of the project funds," Thunderbird has not shown—or even argued—that the court's contrary finding that Defendants' insurance concerns were "legitimate" is clearly erroneous. *See* WIS. STAT. § 805.17(2).

4

¶9 During the same time period in which the parties were attempting to resolve the insurance and contract signature issues, Thunderbird was also attempting to obtain payments from American Design for work that Thunderbird had performed. In November 2018, Thunderbird attempted to send its first invoice to American Design but sent it to the wrong email address. Although the contract required that invoices be sent to Helbling, Woldt either attempted to or did email the November invoice to Williams instead. In an email from Williams to Woldt on January 29, 2019, Williams stated that American Design had not received any invoices from Thunderbird and, in a follow-up email in February 2019, he stated that American Design received its first invoice at the very end of January 2019. Woldt responded, "It is our issue as my bookkeeper was not doing their job which was to verify the invoice was accepted." Woldt also admitted during his trial testimony that the November invoice was not submitted properly and that Defendants had not received it when originally sent. American Design paid this invoice in March 2019.

¶10 Although some or all of the payments were overdue, by April 12, 2019, American Design had paid Thunderbird fifty percent of the total that Thunderbird was owed regarding the Douglas contract. The circuit court credited Williams' testimony that American Design made these payments to Thunderbird despite the deficiencies in Thunderbird's insurance policies because Williams believed Thunderbird would eventually come into compliance with the contract and because he wanted to help a fellow minority-owned firm. The court also credited Williams' testimony, supported by contemporaneous emails, that in May and June of 2019, Williams repeatedly traveled to San Diego to spend time with his sick mother and that, as summarized by the court, "[o]nce things settled down, he had a chance to look things over and he decided that before they paid more on the

5

[Douglas] contract, they needed to get the contract signed and make sure everything else was in order."

¶11 As the circuit court found, on July 31, 2019, "things came to a head" when Woldt sent an email to Sean Kane, an administrator with MPS, complaining about Defendants' nonpayment of invoices on the Douglas contract, with Williams copied on the email. After Kane asked the pair to work out their issues, Williams sent an email to Woldt on August 1, 2019, identifying the following problems: (1) Thunderbird's third-party vendors failed to submit timely invoices; (2) Thunderbird failed to timely sign the Douglas contract; and (3) Thunderbird's COI was still deficient. Williams closed his email by saying he was out of town on a personal family emergency.

¶12 Also on August 1, 2019, Woldt emailed Williams advising that he would be filing suit as a result of Defendants' failure to pay invoices. At some point after Williams read this August 1 email, he informed Woldt that any future communication between them must be through Williams' attorney.

¶13 As of Thunderbird's July 2020 summary judgment motion, Defendants owed Thunderbird $46,050 on the Douglas project. This remaining amount was not paid until December 2020, after the circuit court granted summary judgment to Thunderbird, awarding it damages in that amount.

Bader Project

¶14 Thunderbird's work on the Bader project began in late 2018 or early 2019, with most of the work completed in 2019. Thunderbird sent its first invoice to American Design on March 21, 2019, for $12,975; a second invoice on April 22, 2019, for $25,950; and a third invoice on May 17, 2019, for $2,595. These invoices,

reflecting the total of $41,520 owed on the Bader project, were paid between September 26, 2019 and October 18, 2019.

¶15     As with the Douglas project, problems occurred with the COI for the Bader project.  On September 12, 2019, Thunderbird's business manager emailed a copy of Thunderbird's COI to Helbling and another American Design employee.  That American Design employee emailed the Thunderbird manager, informing him that the COI lacked the language required by the Bader contract, and requested a proper COI.  A few days later, an American Design employee followed up with Woldt and the Thunderbird manager, providing them with sample language from another subcontractor's COI that complied with the Bader contract.  On September 17, 2019, Thunderbird submitted a compliant COI for the Bader project.  Once it received the compliant COI, American Design paid all of the outstanding Bader invoices, with all payments sent within thirty days of Thunderbird achieving compliance.

American Design's Line of Credit

¶16     At trial, Williams testified regarding an open line of credit supplied by a family trust that American Design had used for decades due to the difficulties that Black-owned firms face in obtaining credit from traditional banks in Milwaukee.  He testified that American Design used this "very common" financing tool in conjunction with its central bank account to manage the payments that it needed to make.  Williams further testified that, between the bank account and line of credit (which varied but was around $100,000), American Design "always had the ability to pay Thunderbird's invoices."  The circuit court found that "Williams testified convincingly and without contradiction regarding the line of credit."

7

Lawsuit Leading to Appeal

¶17    On October 15, 2019, Thunderbird filed suit against Defendants, alleging four counts of theft by contractor (one for each defendant for both the Douglas and the Bader projects) and one count of breach of contract against American Design.  Thunderbird sought exemplary damages and attorney fees from both Defendants on its theft-by-contractor claims, pursuant to WIS. STAT. § 895.446(3).

¶18    From March through June 2020, Thunderbird served Defendants with multiple discovery requests, including requests for admission.  Defendants did not respond to any of Thunderbird's discovery requests.  Defendants also failed to appear for noticed depositions.  Williams later represented that this failure to respond was on the advice of prior counsel, who advised that the contracts required Thunderbird to engage in arbitration or mediation.

¶19    Among the unanswered discovery requests served on Defendants were requests for Defendants to admit that American Design breached its contracts with Thunderbird, that Defendants "committed theft by contractor," and that Williams was "liable for civil theft."

¶20    The parties subsequently filed cross-motions for summary judgment. Defendants' primary argument was that Thunderbird could not bring its claims due to arbitration and mediation provisions in the contracts, and that Thunderbird's theft-by-contractor claims against Williams were improper because Williams was not individually a party to the contracts.  In their summary judgment submissions, Defendants also requested sanctions against Thunderbird pursuant to WIS. STAT. § 802.05(2) for filing a "frivolous lawsuit."

¶21 For its part, Thunderbird argued that its requests for admission were deemed admitted and that these admissions disposed of the entire case. In addition to actual damages, Thunderbird also requested exemplary damages and reasonable litigation costs in an amount to be determined, including attorney fees, pursuant to WIS. STAT. § 895.446(3) on its theft-by-contractor claims. In its reply, Thunderbird also requested attorney fees under WIS. STAT. § 802.05(3)(a)1. associated with responding to Defendants' sanctions motion, alleging that the motion did not comply with statutory requirements.

¶22 On October 14, 2020, the circuit court denied Defendants' motion for summary judgment but granted summary judgment to Thunderbird on its breach-of-contract and theft-by-contractor claims based on Defendants' failure to respond to Thunderbird's requests for admission. The court also denied Defendants' request for sanctions under WIS. STAT. § 802.05(3) on the ground that Defendants had not complied with that statute's requirement that a motion for sanctions be made separately from other motions. The court reserved ruling on Thunderbird's request for attorney fees associated with responding to Defendants' improper sanctions motion.

¶23 The circuit court awarded Thunderbird actual damages of $46,050. It reserved ruling, however, on Thunderbird's request for exemplary damages and reasonable litigation costs (including attorney fees) on the theft-by-contractor claims under WIS. STAT. § 895.446(3), stating that it was "loath to award" those damages, given the procedural posture of the case, which the court compared to a default situation due to Defendants' failure to answer the admission requests. The court also instructed the parties to attempt to resolve these remaining issues, particularly given that Defendants' new counsel had only been handling the case for

9

a week. When efforts at resolving the case failed, the court held a two-day trial on the issues of exemplary damages and attorney fees.

¶24 Following the two-day trial and post-trial briefing, the circuit court denied Thunderbird's request for exemplary damages and awarded partial attorney fees of $14,630 under WIS. STAT. § 895.446(3).

¶25 The circuit court also denied Thunderbird's request for attorney fees related to Defendants' request for sanctions under WIS. STAT. § 802.05(3). As discussed separately below, the court likewise denied Thunderbird's request for attorney fees under WIS. STAT. § 804.12(2) for alleged discovery violations related to Defendants' failure to produce bank records.

¶26 Thunderbird appeals.

## DISCUSSION

### I. Exemplary Damages and Attorney Fees for Theft by Contractor Under WIS. STAT. § 895.446(3).

¶27 Thunderbird challenges the circuit court's denial of its request for exemplary damages and the court's partial denial of attorney fees under WIS. STAT. § 895.446(3), arguing that the court's determinations were the result of an erroneous exercise of discretion. For the reasons that follow, we disagree.

A. <u>Criminal theft by contractor, remedies, and standard of review.</u>

¶28 WISCONSIN STAT. § 779.02(5) is the civil theft by contractor provision. This provision states, in relevant part:

> [A]ll moneys paid to any prime contractor … by any owner
> for improvements, constitute a trust fund … to the amount
> of all claims due or to become due or owing from the prime
> contractor … for labor, services, materials, plans, and

10

> specifications used for the improvements, until all the claims have been paid …. The use of any such moneys by any prime contractor … for any other purpose until all claims, expect those which are the subject of a bona fide dispute and then only to the extent of the amount actually in dispute, have been paid in full or proportionally in cases of a deficiency, is theft by the prime contractor ….

*Id.*[3] "By its terms, … § 779.02(5) makes misappropriation of contractor trust funds punishable as a theft under WIS. STAT. § 943.20." *Tri-Tech Corp. of Am. v. Americomp Servs., Inc.*, 2002 WI 88, ¶2, 254 Wis. 2d 418, 646 N.W.2d 822. Section 943.20(1)(b), in turn, provides criminal penalties for whoever, "[b]y virtue of his or her office, business or employment," has "possession or custody of money … of another" and "intentionally uses, transfers, conceals, or retains possession of such money, … without the owner's consent, contrary to his or her authority, and with intent to convert to his or her own use or to the use of any other person except the owner."

¶29 In addition to criminal penalties for violations of WIS. STAT. § 943.20, civil remedies may also be awarded for such violations. WISCONSIN STAT. § 895.446(3) "provides a civil treble damages remedy to victims of certain intentional property crimes [and] includes … § 943.20 as one of the predicate criminal offenses for which the remedy is available." *Tri-Tech*, 254 Wis. 2d 418, ¶2.[4] Section 895.446(1) provides that "[a]ny person who suffers damage or loss by

---

[3] This case also involves WIS. STAT. § 779.16, the theft-by-contractor statute for public projects, because the Andrew S. Douglas School is owned by the public. However, WIS. STAT. §§ 779.02 and 779.16 are substantially the same. *See Century Fence Co. v. American Sewer Serv., Inc.*, 2021 WI App 75, ¶9 n.6, 399 Wis. 2d 742, 967 N.W.2d 32. Therefore, we do not separately address § 779.16.

[4] In *Tri-Tech Corp. of America v. Americomp Services, Inc.*, 2002 WI 88, ¶2, 254 Wis. 2d 418, 646 N.W.2d 822, the court refers to WIS. STAT. § 895.80 (2001-02), which was amended in 2004 by 2003 Wis. Act 138, §§ 19-25, and renumbered to WIS. STAT. § 895.446 by 2005 Wis. Act 155, § 70. As to attorney fees, both versions of the statute allow for recovery of "[a]ll costs of

reason of intentional conduct … that is prohibited under [§] 943.20 … has a cause of action against the person who caused the damage or loss." "The burden of proof in a civil action under sub. (1) is with the person who suffers damage or loss to prove a violation of [§] 943.20 … by a preponderance of the credible evidence." Sec. 895.446(2).

¶30    WISCONSIN STAT. § 895.446(3) authorizes the following damages and costs for violations under § 895.446(1):

> **(3)** If the plaintiff prevails in a civil action under sub. (1), he or she may recover all of the following:
>
> **(a)** Actual damages, including the retail or replacement value of damaged, used, or lost property, whichever is greater, for a violation of [§] 943.20 ….
>
> **(b)** All costs of investigation and litigation that were reasonably incurred, including the value of the time spent by any employee or agent of the victim.
>
> **(c)** Exemplary damages of not more than 3 times the amount awarded under par. (a). No additional proof is required under this section for an award of exemplary damages under this paragraph.

---

investigation and litigation that were reasonably incurred." *See* § 895.446(3)(b); WIS. STAT. § 895.80(3)(b) (2001-02). Regarding exemplary damages, the only difference between the two versions of the statutes is that the prior version allowed for recovery of "treble damages," whereas the current version allows for recovery of "[e]xemplary damages of not more than 3 times the amount awarded under par. (a) [actual damages]." *See* § 895.446(3)(c); § 895.80(3)(a) (2001-02). The parties do not argue that this statutory change makes any difference to our interpretation of *Tri-Tech* or to the outcome in this matter. In discussing *Tri-Tech*, this opinion substitutes the current numbering of the statute for the prior numbering.

12

"[A]ttorney fees are included with the meaning of 'costs of investigation and litigation' under … § 895.446(3)(b)." ***Estate of Miller v. Storey***, 2017 WI 99, ¶49, 378 Wis. 2d 358, 903 N.W.2d 759 (quoted source omitted).[5]

¶31　In ***Tri-Tech***, our supreme court examined the interplay between WIS. STAT. §§ 779.02(5), 943.20, and 895.446. The court concluded that "the treble damages remedy of WIS. STAT. § [895.446] is available for civil theft by contractor under … § 779.02(5), by operation of WIS. STAT. § 943.20." ***Tri-Tech***, 254 Wis. 2d 418, ¶43.

¶32　However, the supreme court further concluded that specific requirements must be satisfied in order to establish a violation of the criminal theft-by-contractor provision and thereby unlock exemplary damages under WIS. STAT. § 895.446(3). *See **id.***, ¶¶24, 43. Specifically, in order to qualify for exemplary damages, "the elements of both the civil *and* the criminal statutes [must be] proven, albeit to the civil preponderance burden of proof." ***Id.***, ¶24. "Stated differently, the basis of liability for criminal theft by contractor is a violation of the trust fund provisions of WIS. STAT. § 779.02(5), plus the criminal intent required by WIS. STAT. § 943.20(1)(b)." ***Id.***, ¶24 (alteration to original) (citing ***State v. Wolter***, 85 Wis. 2d 353, 362-63, 270 N.W.2d 230 (Ct. App. 1978), for the proposition that criminal intent is the difference between civil and criminal theft by contractor). "Indeed, it is specific criminal intent that makes the civil offense punishable criminally: 'some additional element of culpability, whether it be denominated as wrongful, criminal, fraudulent, felonious, or wrongfully fraudulent, must be shown

---

[5] For ease of reading, going forward, this opinion refers to "attorney fees" when discussing WIS. STAT. § 895.446(3)(b).

to sustain a criminal conviction for theft by contractor.'" *Id.*, ¶30 (quoted source omitted).

¶33    The intent element for criminal theft by contractor under WIS. STAT. §§ 943.20(1)(b) and 779.02(5) is "specific criminal intent, to-wit, that the defendant knowingly retained possession of or used contractor trust funds without the owner's consent, contrary to [the defendant's] authority, and with intent to convert such funds for [the defendant's] own use or the use of another." *Id.*, ¶2.

¶34    As we discuss in more detail below, the parties agree—and the circuit court determined—that an award of exemplary damages and attorney fees under WIS. STAT. § 895.446(3) is discretionary rather than mandatory. *See, e.g.*, § 895.446(3) ("If the plaintiff prevails in a civil action under sub. (1), he or she *may* recover" actual damages, all costs of investigation and litigation reasonably incurred, and "exemplary damages of not more than 3 times" the actual damages. (emphasis added)). The parties further agree that the court's decision denying exemplary damages and partially denying attorney fees is reviewed for an erroneous exercise of discretion.

B.  The circuit court's decision.

¶35    In reaching its determinations, the circuit court first explained that awards of exemplary damages and attorney fees are discretionary rather than mandatory. The court then separately addressed Thunderbird's requests for exemplary damages and attorney fees. With regard to exemplary damages, the court concluded that Thunderbird had not established the type of "egregious conduct necessary to warrant" their imposition, and that "[n]othing about the course of conduct related to those contracts justifies the imposition of exemplary damages." The court noted Defendants' "ongoing" and "legitimate" concerns regarding

insurance issues and "needing the [Douglas] contract to be signed." The court also observed that "[b]oth [parties] agree that defendant[s] [were] not required to segregate the funds [they] received for each project in this case" but that "it seems to be an open question in Wisconsin whether having a line of credit available to pay any subcontractors satisfies the requirement that the assets of the trust be preserved." After discussing pertinent case law, the court stated that "because the law is uncertain on this point, I am not going to impose exemplary damages on defendants for [their] use of this method." The court also found that Williams "testified convincingly and without contradiction regarding the line of credit and so I conclude his use of funds in his co-mingled account while having available a line of credit is not the type of conduct which deserves imposition of exemplary damages."

¶36    Regarding attorney fees, the circuit court stated it would not award Thunderbird all of the fees requested, such as those related to the original filing or for the two-day hearing on exemplary damages and attorney fees. Again, the court noted that "there were legitimate issues" that would make attorney fees for this part of the litigation inappropriate. However, the court awarded Thunderbird attorney fees incurred for addressing Defendants' arguments on summary judgment. The court stated that, "given the posture of this case with requests for admissions on file with no response," "[i]t was clear once that motion [for summary judgment] had been filed [by Thunderbird, that Thunderbird] was going to recover and the [Defendants'] briefing and response was no response at all, practically, and [Thunderbird] then had to file a reply."

¶37    Both parties construe the circuit court's decision on exemplary damages and attorney fees to have been based, at least in part, on a conclusion that Thunderbird had not established the requisite intent element as required by *Tri-*

*Tech*, discussed above.  Based on this assumption, Thunderbird argues that the court erroneously exercised its discretion in reaching this conclusion, whereas Defendants argue that the court properly exercised its discretion in this regard.

¶38     But Defendants also argue (as they did in their post-trial circuit court brief) that, even if Thunderbird had satisfied the intent element, the court could nevertheless, in its exercise of discretion, decline to award exemplary damages (and presumably, attorney fees).[6]  It is clear from the court's statements that the court based its ruling at least in part on its conclusion that the award of exemplary damages and attorney fees under WIS. STAT. § 895.446(3) is discretionary rather than mandatory, even assuming the intent element as articulated in *Tri-Tech* is satisfied.  For example, the court led its discussion on these issues by observing that § 895.446(3) states that a court "may" make such awards, which the court stated "ordinarily suggests that the recovery is permitted, not required, and thus is subject to the exercise of discretion."  The court also discussed pertinent case law, which we discuss in more detail below, that supports the conclusion that such awards are discretionary.  In denying exemplary damages, the court summarized its rationale as follows:  "In sum, I conclude [that Thunderbird] has failed to establish the type of egregious conduct necessary to warrant the imposition of exemplary damages."

¶39     In addition, during a pretrial ruling in which the circuit court allowed Defendants to introduce emails and other evidence at trial, the court stated that the evidence was relevant to the issue of intent as explained in *Tri-Tech*, but the court also offered another basis for its admission:  "I'm also allowing … this evidence

---

[6] The parties do not separately discuss exemplary damages and attorney fees under WIS. STAT. § 895.446(3).  Rather, the parties' arguments appear to focus on the issue of exemplary damages while presuming that all of the arguments pertaining to that issue also pertain to the issue of attorney fees.

because exemplary damages and attorney's fees are discretionary with the court and the evidence may bear on the exercise of the court's discretion." This further demonstrates that the court considered Defendants' culpability and the egregiousness of the conduct, not simply for purposes of determining the intent issue under *Tri-Tech*, but also for purposes of exercising its discretion apart from the *Tri-Tech* analysis.[7]

¶40     Moreover, the circuit court awarded partial attorney fees under WIS. STAT. § 895.446(3), which both the court and the parties appear to agree also requires a finding of the requisite intent under *Tri-Tech*. Thus, if the court concluded that Thunderbird failed to establish intent, it is unclear why it would have awarded attorney fees under § 895.446(3). For purposes of this decision, however, we need not determine whether the court did or did not conclude that Thunderbird proved intent. First, Defendants do not challenge the court's award of partial attorney fees on the ground that intent was not established. Second, our decision in this case does not rest on the issue of intent, but instead on whether—assuming the intent element was satisfied—the court properly exercised its discretion.

¶41     For the reasons we now discuss, we conclude that Thunderbird has failed to show that the circuit court erroneously exercised its discretion in denying exemplary damages and awarding only partial attorney fees under WIS. STAT. § 895.446(3). Accordingly, we do not address the parties' various arguments regarding intent. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9,

---

[7] Putting aside the issue of specific, legal intent as defined in *Tri-Tech*, an individual's subjective intent or state-of-mind is indisputably relevant to that person's level of culpability and the egregiousness of the conduct at issue. Thus, although the court stated that "[t]he ongoing concerns regarding insurance coverage and signing the contract demonstrate there was not specific intent to steal [Thunderbird's] money which was owed," it is not clear that this statement is a specific conclusion that the intent element under *Tri-Tech* was not satisfied.

17

352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive."); *Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15 ("Typically, an appellate court should decide cases on the narrowest possible grounds.").

C. Thunderbird fails to show that the circuit court erroneously exercised its discretion in denying exemplary damages and in awarding only partial attorney fees under WIS. STAT. § 895.446(3).

¶42     As stated, Defendants argue that, even if Thunderbird had satisfied the intent and other elements of criminal theft by contractor, the circuit court's determinations should nevertheless be affirmed because the court was not *required* to award exemplary damages or full attorney fees; rather, as the court concluded, such awards are discretionary. As also noted, we conclude that the court's denial of exemplary damages and its partial award of attorney fees were based, at least in part, on the court's exercise of this discretion separate from any conclusion it may have reached regarding the intent element in *Tri-Tech*.

¶43     Thunderbird does not dispute Defendants' argument that a court may decline to award exemplary damages and attorney fees even when the elements of criminal theft by contractor are satisfied. Thunderbird agrees that the awards at issue are discretionary or, as Thunderbird states, "permissive" rather than mandatory. *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (we may treat as a concession a proposition asserted in a respondent's brief and not disputed in the reply brief). Although we could rely exclusively on Thunderbird's concession on this point, we further note that case law and persuasive authority support the conclusion that exemplary damages and attorney fees under WIS. STAT. § 895.446(3) are discretionary and are not required to be awarded, even

when the requisite elements of criminal theft by contractor, including intent, are established. The case that most succinctly makes this point is ***Hookstead v. Beal***, No. 2020AP895, unpublished slip op. ¶52 (WI App Aug. 5, 2021),[8] which states: "Exemplary damages are not automatically awarded under § 895.446(3) to a plaintiff who has met each of the elements of his or her claim under sub. (1), nor are the damages necessarily trebled."

¶44 Similarly, as the circuit court observed, our supreme court in ***Storey*** also discusses the discretionary nature of exemplary damages under WIS. STAT. § 895.446(3)(c). *See* ***Storey***, 378 Wis. 2d 358, ¶69. In ***Storey***, a circuit court awarded exemplary damages after a jury awarded actual damages. On appeal, the supreme court reversed the circuit court's exemplary damage award, concluding that the issue was one for the jury. The supreme court discussed the standard for awarding exemplary damages, which it determined were synonymous with punitive damages. ***Id.***, ¶69 & n.32. Relying on a prior decision involving punitive damages, the court concluded:

> The judge has the duty to act as the "gatekeeper" when determining whether the issue of punitive damages is properly before the jury. Once the judge has determined that the issue of punitive damages is properly before the jury, whether to actually award punitive damages in a particular case is entirely within the discretion of the jury.

***Id.***, ¶69 (footnote and quoted source omitted). In other words, "[a]lthough the judge initially determines whether exemplary damages are an appropriate issue to be presented to the trier of fact, it is within the discretion of the trier of fact [in that case, the jury] to determine whether to actually award exemplary damages [under

---

[8] *See* WIS. STAT. RULE 809.23(3)(b) (an unpublished opinion that is authored by a member of a three-judge panel on or after July 1, 2009, may be cited for persuasive authority).

§ 895.446(3)(c)] and, if so, in what amount." *Id.* The court further noted that "in some instances, the judge is also the trier of fact and it would be appropriate in that instance for the judge to determine whether to award exemplary damages and the amount of the award." *Id.*, ¶70 n.33. We agree with the circuit court in this case that *Storey* "strong[ly] … support[s] the notion that [§] 895.446(3) should be interpreted as discretionary rather than mandatory."

¶45 The circuit court also relied on a case cited by Defendants, *Stangel v. Stangel*, 593 B.R. 607, 617 (Bankr. E.D. Wis. 2018), in which an Eastern District of Wisconsin bankruptcy court interpreted *Storey* as conclusively resolving the issue of whether WIS. STAT. § 895.446(3) is discretionary or mandatory. In *Stangel*, the court analyzed *Storey* and two other Wisconsin cases (discussed below), and concluded, "[T]he case law is clear that exemplary damages under WIS. STAT. [§] 895.446(3)(c) are discretionary, and that the Court must make a reasonable inquiry and examination of the facts … to determine whether exemplary damages are appropriate." *Stangel*, 593 B.R. at 617 (alteration to original).

¶46 The two other Wisconsin cases upon which the *Stangel* court relied likewise support the position that an award of exemplary damages is within the circuit court's discretion. In *Shopko Stores, Inc.*, this court interpreted a provision, WIS. STAT. § 943.51(2) (1987-88),[9] with language nearly identical to that in WIS.

---

[9] At that time, WIS. STAT. § 943.51(2) (1987-88) provided:

> In addition to sub. (1) [providing for actual damages], if the person who incurs the loss prevails, the judgment in the action may grant any of the following:
>
> (a) 1. Exemplary damages of not more than 3 times the amount under sub. (1)(a) and (b).

STAT. § 895.446(3)(c), and concluded that "may" in that provision means "exemplary damages are not mandatory." ***Shopko Stores, Inc. v. Kujak***, 147 Wis. 2d 589, 600, 433 N.W.2d 618 (Ct. App. 1988). We further concluded that the plaintiff's claim for exemplary damages in that case "cannot be resolved in a principled fashion on summary judgment," explaining:

> Because punitive or exemplary damages are analyzed by considering the nature of the wrongdoer's conduct, … there is always the question of whether they shall be awarded at all…. "It is a generally accepted rule that once the court determines that the evidence merits submitting the punitive damage issues to the jury, it is entirely within the discretion of the jury to determine whether damages should be awarded at all and to determine the amount which should be awarded."
>
> Thus, while proof of [the defendant's] retail theft is sufficient to subject her to exemplary damages, she may escape an award of such damages altogether if, in the judgment of the fact-finder, her offense does not warrant "the added sanction of a punitive damage to deter others .…" Jean Valjean, for example, if sued in a civil action under a statute such as [§] 943.51 [(1987-88)], might have escaped punitive damages for his theft of bread to feed his family.

*Id.* at 601-02 (citations and quoted sources omitted). Similarly, in ***Stathus v. Horst***, 2003 WI App 28, 260 Wis. 2d 166, 659 N.W.2d 165, we concluded:

> Whether to award treble damages under [the prior version of] WIS. STAT. § 895.446(3)(a), is a matter left to the discretion of the trial court. We will uphold that ruling as long as the trial court did not erroneously exercise its discretion, which requires a "reasonable inquiry and examination of the facts" to reach a reasonable conclusion.

---

2. No additional proof is required for an award of exemplary damages under this paragraph.

*Shopko Stores, Inc. v. Kujak*, 147 Wis. 2d 589, 591 & n.1, 433 N.W.2d 618 (Ct. App. 1988).

21

(Footnote omitted); *see also* **Laughland v. Beckett**, 2015 WI App 70, 365 Wis. 2d 148, ¶34, 870 N.W.2d 466 (an "award of punitive damages is within the discretion of the factfinder").

¶47    Although these cases address exemplary damages pursuant to WIS. STAT. § 895.446(3), we see no principled rationale for distinguishing an award of attorney fees under that same statute, nor do the parties advance any such distinction.

¶48    As noted, Thunderbird does not dispute that the circuit court was not required to award exemplary damages or all attorney fees, even upon a finding of the requisite intent.   Instead, Thunderbird argues that the court nevertheless erroneously exercised its discretion because its decision was based on a series of legal errors.  But all of the legal errors Thunderbird alleges relate only to whether the court erred in determining that the intent element of criminal theft by contractor was not satisfied, not to the court's inherent exercise of its discretion, assuming that the intent element was satisfied.  Thunderbird makes no separate argument as to how any of its alleged legal errors affect our analysis of whether the court properly exercised its discretion assuming intent was established.  And based on the court's comments, we cannot conclude that its discretionary determinations were predicated on a determination that Thunderbird failed to establish the intent element as set forth in **Tri-Tech**.

¶49    Thunderbird's only response with respect to the discretionary nature of such awards is the conclusory assertion that "the circuit court had a developed record before it, including a history of discovery misconduct by Defendants and unanswered admissions.   This is an appropriate exemplary damages case." Thunderbird's argument on this point is undeveloped and need not be considered.

*See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments). Thunderbird does not explain, for example, how Defendants' conduct during the litigation, including purported discovery violations, relate to a discretionary determination of whether exemplary damages (or attorney fees) should be awarded as a remedy for its violation of the criminal theft by contractor statute.

¶50 Based on the record and Thunderbird's lack of any developed argument on this point, we conclude that Thunderbird fails to show that the circuit court erroneously exercised its discretion with respect to either exemplary damages or attorney fees. *See Gaugert v. Duve*, 2001 WI 83, ¶44, 244 Wis. 2d 691, 628 N.W.2d 861 (We sustain a discretionary act where the trial court "'examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach.'" (quoted source omitted)).

## II. Attorney Fees Under WIS. STAT. § 802.05(3) and WIS. STAT. § 802.12(2).

¶51 Thunderbird argues that the circuit court erroneously exercised its discretion in failing to grant Thunderbird's request for attorney fees under WIS. STAT. §§ 802.05(3) and 802.12(2). Whether to award attorney fees under these provisions is left to the court's discretion and is therefore reviewed by this court for an erroneous exercise of discretion. *See Ten Mile Invs., LLC v. Sherman*, 2007 WI App 253, ¶1 n.2, 306 Wis. 2d 799, 743 N.W.2d 442 (addressing § 802.05(3)); *Alt v. Cline*, 224 Wis. 2d 72, 92-93, 589 N.W.2d 21 (1999) (addressing § 802.12(2)).

¶52 Thunderbird's argument is predicated almost exclusively on its assertion that the circuit court "forgot" to rule on these requests. It asks that we

"reverse and remand for consideration of those motions." Because we conclude that Thunderbird's predicate assertion is not supported, and Thunderbird does not advance any other developed argument in support of its position, its arguments fail. Before explaining our conclusion, we first provide additional background.

¶53     As to Thunderbird's request for attorney fees under WIS. STAT. § 802.05(3), we reiterate the following. In their motion for summary judgment, Defendants requested sanctions against Thunderbird under § 802.05(3) for filing what Defendants claimed was a meritless complaint. In response, Thunderbird argued that it should be awarded attorney fees pursuant to that provision for having to respond to Defendants' meritless sanctions request. *See* § 802.05(3) ("If warranted, the court may award to the party prevailing on the motion [under § 802.05] reasonable expenses and attorney fees incurred in presenting or opposing the motion."). The circuit court denied Defendants' request for sanctions, stating that Defendants had not complied with the requirement in § 802.05(3)(a)1. that a request for sanctions be filed by separate motion. The court deferred ruling on Thunderbird's request for attorney fees related to its response to Defendants' sanctions request.

¶54     With regard to Thunderbird's request for attorney fees under WIS. STAT. § 802.12(2) as a sanction for alleged discovery violations, the pertinent facts are as follows. Approximately a month prior to the circuit court's order granting summary judgment to Thunderbird, Thunderbird issued a subpoena *duces tecum* to BMO Harris Bank for certain bank records of Defendants. Defendants moved to quash the subpoena and Thunderbird filed a response. A day later, the court issued its ruling on summary judgment and reserved ruling on the bank records issue, urging the parties to attempt to resolve this issue, along with the issues of exemplary damages and attorney fees on the theft-by-contractor claims.

24

¶55 Following additional submissions from the parties, the circuit court held a hearing on the motion to quash. The court again reserved ruling on the motion and instead ordered Defendants to "provide responses to [Thunderbird's] previously served written discovery," and to produce Williams for deposition. The court stated that it was "trying to thread the needle" in terms of allowing Thunderbird "a fair opportunity for discovery," while recognizing that the bank documents could contain "other information that has nothing to do with this." At one point, the court also directed the following inquiry to Thunderbird's counsel: "It does seem like a very broad request. I mean it's a given that the payment wasn't made, so what interest does [Thunderbird] have in knowing about all the other things that might be contained in those bank records?" The court stated that if the parties were not able to resolve the discovery issues, the court would revisit the motion to quash.

¶56 Defendants filed a response to discovery. Defendants objected on various grounds to Thunderbird's request to "[p]rovide copies of all bank statements for American Design from January 1, 2018 to the present," stating they would "produce documentation sufficient to show when it received payment from MPS." Defendants also provided redacted bank statements.

¶57 A few weeks prior to trial, Thunderbird moved for sanctions, including attorney fees, pursuant to WIS. STAT. § 804.12, based on what Thunderbird alleged were Defendants' discovery violations for failing to produce the bank records. Thunderbird requested default judgment granting Thunderbird treble damages and reasonable litigation costs under WIS. STAT. § 895.446(3). In the alternative, it requested an order granting Thunderbird an adverse inference that the withheld information would conclusively support a finding of the requisite intent to support exemplary damages and attorney fees under that provision. Thunderbird also requested an order prohibiting Defendants from relying on any documents in

further proceedings that had not been produced, and an order granting Thunderbird attorney fees and costs incurred for bringing its motions for sanctions.

¶58 At a pretrial hearing primarily addressing other issues, the circuit court also addressed the pending motions, noting:

> I know there's the motion for sanctions and so forth. I'm not going to rule on that right now … but I will tell you I'm unlikely to grant a default as requested. That would be in the unlikely category. And on the other ones, it's hard to rule in the abstract. I mean, I can read your brief. I understand what you're saying and why you're asking for it, but I'm reserving on the request, because [counsel for Defendants] might use a document one way versus another way. And if he did it in the first way, maybe your motion will be well-founded, but maybe if he's using that document for a second purpose, it might not be. So it's just very difficult, at least in my opinion, to make advanced rulings on those sort of things. I'm not denying anything, I'm just holding that in abeyance pending the actual trial playing out, okay?

In response, counsel for Thunderbird stated: "We kind of expected that, your Honor. We understand that. We're obviously not—we're maintaining our motions, but we understand the court won't probably rule on those until later." On the same day of the pretrial conference, Defendants provided additional bank records, again with redactions.

¶59 A few months after trial, the circuit court issued its oral ruling on the issue of exemplary damages and attorney fees under WIS. STAT. § 895.446(3). Following the court's ruling granting partial attorney fees under that provision, the following exchange occurred:

> [THUNDERBIRD'S COUNSEL]: There were related motions, you know, motions to dismiss and motions for sanctions that we raised around the same time that we did the summary judgment. I don't know if the court is taking a position on whether those are included in what is being awarded.

> THE COURT: I forgot about the motion for sanctions and so forth. Let's put it this way, the original putting together the motion for summary judgment I'll not award, okay? But once that was in the lap, so to speak, of the defendants and they reviewed your motion and then based on what they did thereafter, you shouldn't have had to keep responding until the point where the summary judgment was granted; does that help?
>
> [THUNDERBIRD'S COUNSEL]: Yeah, we'll take a shot at trying to figure out what that is, your Honor.
>
> THE COURT: I'm sorry I can't be more exact, but if you guys can't figure out a number, come back to me and I'll decide whatever it is, okay?
>
> [THUNDERBIRD'S COUNSEL]: Fair enough, your Honor.

Thus, the record shows that, when reminded by Thunderbird's counsel of the remaining requests for attorney fees, the court took up the issue and again determined that the attorney fees it had awarded under § 895.446(3) were appropriate. In other words, the court denied Thunderbird's requests for additional attorney fees, awarding no further amounts under WIS. STAT. § 802.05(3) or WIS. STAT. § 802.12(2), a determination that was consistent with the court's prior stated concerns about the broad nature of the request and the relevance of the bank records. We therefore disagree with Thunderbird's statements that "no ruling on attorney fees for those motions was ever provided" and that the court "never addressed Thunderbird's sanctions motions in spite of requests to do so." As a result, to the extent that Thunderbird's argument is predicated on the premise that the court erroneously exercised its discretion because it "forgot" to rule on the motions, that argument is unfounded.

¶60 We also reject Thunderbird's arguments for additional reasons. First, we note that Thunderbird focuses almost exclusively on its request for attorney fees as a result of alleged discovery violations under WIS. STAT. § 802.12(2). With

respect to its request for attorney fees under WIS. STAT. § 802.05(3), Thunderbird presents no developed argument as to how the circuit court erroneously exercised its discretion. It argues only that the court "forgot" to rule on this issue, an argument we've already rejected, and makes a conclusory argument that Defendants' "motion for frivolous action sanctions was completely without basis and was denied by the circuit court." We decline to consider this inadequately developed argument. *See Pettit*, 171 Wis. 2d at 646.

¶61 As to attorney fees for alleged discovery violations under WIS. STAT. § 802.12(2), aside from its now-rejected argument that the circuit court "forgot" to address this issue, Thunderbird likewise fails to develop an argument supporting its position that the court's denial constituted an erroneous exercise of discretion. It argues that "Thunderbird's motion for discovery sanctions was far from trivial. It was based on repeated egregious discovery violations" and that "[n]ot only did Defendants suffer no consequences for these violations, they benefitted greatly because Defendants successfully prevented crucial damning evidence from entering the record." This does not constitute a developed argument that the court erroneously exercised its discretion in declining to award additional attorney fees for alleged discovery violations. *See Pettit*, 171 Wis. 2d at 646.

¶62 Further, as noted, at the time of the circuit court's ruling on additional attorney fees, Thunderbird had already been granted summary judgment on its breach-of-contract and theft-by-contractor claims due to Defendants' failure to respond to Thunderbird's admission requests. The only issues remaining for trial were related to exemplary damages and attorney fees. Although Thunderbird states that the bank records were "crucial damning evidence" and that Defendants' "benefitted greatly" by their absence, it fails to articulate any connection between the bank records and the court's discretionary determination on the remaining issues

28

for trial, particularly given Defendants' use of a line of credit and Williams' testimony—credited by the court—that American Design always had the ability to pay Thunderbird.

¶63 Finally, we agree with Defendants that attorney fees were not warranted because there was not a determination that Defendants engaged in discovery violations with respect to the bank records. Without such a finding, there can be no attorney fees awarded as a sanction. In response to this argument from Defendants, Thunderbird argues that this "is Thunderbird's point—the circuit court 'forgot' about Thunderbird's sanctions motions and made no reasoned ruling on that issue." As shown above, however, to the extent the court did not explicitly rule on whether discovery violations had actually occurred with respect to the bank records, Defendants had several opportunities to request a more explicit ruling on that issue but did not do so.

¶64 In sum, Thunderbird fails to establish that the circuit court erroneously exercised its discretion in denying Thunderbird additional attorney fees under either WIS. STAT. § 803.05(3) or WIS. STAT. § 802.12(2).

## CONCLUSION

¶65 For the reasons stated, we affirm the circuit court order denying exemplary damages and awarding partial attorney fees under WIS. STAT. § 895.446, and its ruling denying additional attorney fees under WIS. STAT. §§ 802.05(3) and 802.12(2).

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.